DANIEL JOHNSON, JR., State Bar No. 57409
RITA E. TAUTKUS, State Bar No. 162090
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: djjohnson@morganlewis.com
E-mail: rtautkus@morganlewis.com

Attorneys for Defendant and Counterclaimant
BIOSEARCH TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFE TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> vs. <br><br> BIOSEARCH TECHNOLOGIES, INC., <br><br> Defendant. | Case No. 10-CV-2665 JAH (WVG) <br><br> **ANSWER TO COMPLAINT AND COUNTERCLAIMS** <br><br> **DEMAND FOR JURY TRIAL** <br><br> The Honorable John A. Houston |
| BIOSEARCH TECHNOLOGIES, INC., <br><br> Counterclaimant, <br><br> vs. <br><br> LIFE TECHNOLOGIES CORP. <br><br> Counterclaim-Defendant. | |

## **ANSWER**

Defendant and Counterclaimant Biosearch Technologies, Inc. ("Biosearch"), by and through its undersigned counsel, hereby answers the Complaint of Plaintiff and Counterclaim-Defendant Life Technologies Corporation ("Life Tech") as follows:

Biosearch denies each and every allegation contained in Life Tech's Complaint and Demand for Jury Trial (the "Complaint"), except as specifically admitted or explained herein. To

DB2/22244321.2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the extent that the headings or any other non-numbered statements in Life Tech's Complaint contain any allegations, Biosearch denies each and every such allegation. In response to the first paragraph on page 1 of the Complaint, no answer is required.

## JURISDICTION AND VENUE

1.      Biosearch admits that the Complaint purports to be an action arising under the patent laws of the United States. Biosearch admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a). For purposes of this action only, and without admitting to the validity of Life Tech's infringement claims, Biosearch does not contest that it is subject to personal jurisdiction in this Court. Except as expressly admitted herein, Biosearch denies the remaining allegations of paragraph 1 of the Complaint.

2.      Biosearch admits, without admitting to the validity of Life Tech's infringement claims, that venue may be proper pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b). Except as expressly admitted herein, Biosearch denies the remaining allegations of paragraph 2.

## PARTIES

3.      Biosearch is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 3 and, on that basis, denies said allegations.

4.      Biosearch admits that the face of U.S. Patent No. 7,160,997 ("the '997 Patent") shows it is entitled "Methods of using FET labeled oligonucleotides that include a 3'→5' exonuclease resistant quencher domain and compositions for practicing the same." Biosearch is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 4 and, on that basis, denies said allegations.

5.      Biosearch admits that it is a California corporation, with its principal place of business at 81 Digital Drive, Novato, California 94949. Except as expressly admitted herein, Biosearch denies the remaining allegations of paragraph 5 of the Complaint.

6.      Biosearch admits that it manufactures, offers for sale and sells fluorescent probes incorporating customer specifications. The specifications may be for probes useful in DNA analysis. Biosearch admits that these probes may be named "BHQ®plus." Except as expressly admitted herein, Biosearch denies the remaining allegations of paragraph 6.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2                            2

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

# FIRST CLAIM FOR RELIEF

# INFRINGEMENT OF UNITED STATES PATENT NO. 7,160,997

7. Biosearch admits that Life Tech purports to reallege and incorporate by reference paragraphs 1 through 6 of its Complaint.

8. Biosearch admits that the '997 Patent, on its face, lists an issue date of January 9, 2007. Biosearch admits that Life Tech purports to attach a true and correct copy of the '997 Patent as Exhibit A to the Complaint. Biosearch lacks sufficient knowledge or information to admit or deny the remaining allegations contained in paragraph 8 of the Complaint and on that basis, denies these allegations.

9. Biosearch denies each and every allegation of paragraph 9 of the Complaint.

10. Biosearch denies each and every allegation of paragraph 10 of the Complaint.

11. Biosearch denies each and every allegation of paragraph 11 of the Complaint.

## RESPONSE TO LIFE TECH'S JURY DEMAND

12. Biosearch states that Life Tech's jury demand does not require a response.

## RESPONSE TO LIFE TECH'S PRAYER FOR RELIEF

13. Biosearch denies that Life Tech is entitled to the relief sought, or any other relief.

## AFFIRMATIVE DEFENSES

Further answering the Complaint, Biosearch asserts the following defenses. Biosearch reserves the right to amend its Answer with additional defenses as further information is determined.

## FIRST DEFENSE

**(Failure to State a Claim)**

14. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

15. Life Tech's Complaint fails to state a claim upon which relief may be granted.

## SECOND DEFENSE

**(Non-infringement of the Asserted Patent)**

16. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

17. Biosearch has not infringed, contributed to the infringement of, or induced the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2

3

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

infringement of any valid claim of the '997 Patent, and is not liable for infringement thereof.

**THIRD DEFENSE**

**(Invalidity of the Asserted Patent)**

18. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

19. One or more claims of the '997 Patent are invalid for failing to comply with the provisions of the Patent Laws of the United States, including without limitation 35 U.S.C. §§ 101, 102, 103 and/or 112, and Life Tech's claims for relief are therefore barred.

**FOURTH DEFENSE**

**(Lack of Standing to Sue)**

20. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

21. Upon information and belief, Life Tech lacks standing to sue because it does not hold sufficient rights to the '997 Patent.

**FIFTH DEFENSE**

**(Prosecution History Estoppel)**

22. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

23. To the extent that Life Tech attempts to assert infringement under the doctrine of equivalents, Biosearch believes that arguments and amendments contained in the prosecution history of the '997 Patent will estop or bar any claims for alleged infringement.

**SIXTH DEFENSE**

**(Unclean Hands)**

24. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

25. Life Tech's claims for alleged infringement are barred or limited by the doctrine of unclean hands and other equitable doctrines.

**SEVENTH DEFENSE**

**(Laches/Equitable Estoppel)**

26. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

27. Life Tech's Complaint is barred, in whole or in part, under the doctrines of laches and estoppel. By way of example, and without limitation, Biosearch alleges, on information and

DB2/22244321.2    4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

belief, that Plaintiff's claims under the '997 Patent are barred by the doctrine of laches because (1) Plaintiff knew of Biosearch's allegedly infringing actions, (2) Plaintiff inexcusably failed to pursue its infringement claims in a timely and diligent manner from the time it became aware it had claims against Biosearch, and (3) Biosearch has been materially prejudiced by Plaintiff's inexcusable lack of diligence.

**EIGHTH DEFENSE**

**(Unavailability of Relief)**

28. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

29. Life Tech has failed to plead and meet the requirements of 35 U.S.C. § 271(b) and (c) and is not entitled to any alleged damages prior to providing any actual notice to Biosearch of the '997 Patent.

**NINTH DEFENSE**

**(Adequate Remedy at Law)**

30. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

31. Life Tech's claims for injunctive relief are barred in light of the fact that Life Tech has an adequate remedy at law.

**TENTH DEFENSE**

**(Failure to Mark)**

32. Biosearch incorporates by reference paragraphs 1 through 13 of its Answer.

33. Life Tech's claims for damages are barred or limited due to failure by Life Tech to allege compliance with, and failure to comply with, the requirements of 35 U.S.C. § 287.

**PRAYER FOR RELIEF**

WHEREFORE, Biosearch respectfully prays for the entry of judgment as follows:

A. Dismissing with prejudice any and all claims of Life Tech's Complaint and ordering that Life Tech take nothing as a result of the Complaint;

B. Judging the '997 Patent and its claims invalid;

C. Judging that Biosearch has not and does not infringe, directly or indirectly, induce infringement of, or contribute to the infringement of, any valid and enforceable claim of the '997

DB2/22244321.2   5

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Patent;

    D.    That Life Tech be denied any remedies available under 35 U.S.C. § 284;

    E.    That the Court deny Life Tech any injunctive relief;

    F.    That the Court deny Life Tech any other relief as to its claim for relief for patent infringement;

    G.    Finding that this is an exceptional case and awarding Biosearch its reasonable costs of suit and attorneys' fees as the prevailing party pursuant to 35 U.S.C. § 285;

    H.    That the Court award Biosearch its costs of suit; and

    I.    That the Court award such further relief as deemed just and proper.

## BIOSEARCH'S COUNTERCLAIMS

1. Counterclaimant Biosearch hereby submits these counterclaims pursuant to Federal Rule of Civil Procedure 13 and incorporates by reference paragraphs 1 through 13 of its Answer.

## JURISDICTION

2. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq*.

3. This Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338, and 1367.

4. This Court has personal jurisdiction over Life Tech at least because Life Tech submitted itself to this Court's personal jurisdiction by suing Biosearch in this Court.

## PARTIES

5. Biosearch is a California corporation with its principal place of business at 81 Digital Drive, Novato, California 94949.

6. Upon information and belief, Life Tech is a Delaware corporation with a principal place of business at 5791 Van Allen Way, Carlsbad, California 92008.

## VENUE

7. Venue for these counterclaims is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) and because Life Tech has consented to venue in this district by filing the underlying action against Biosearch.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2    6

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

## ALLEGATIONS

8. Biosearch is a leading provider of specialized chemical reagents and oligonucleotide probes for use in pharmacogenomic research, DNA sequencing, and gene expression analysis. Among other things, Biosearch supplies fluorescence-quenched probes and primers that are a critical component to gene expression analysis and disease detection.

9. The fluorescence-quenched probes sold by Biosearch incorporate, on one end, a reporter dye that emits fluorescence, and, on the other end, a quencher dye that inhibits fluorescence from the reporter dye. In or around 2000, Biosearch developed an exceptionally dark quencher, with broad absorption spectra, known as the Black Hole Quencher® ("BHQ®"). The BHQ® technology has been patented and has become a standard product in the industry and is currently licensed to numerous biotechnology companies.

10. From at least as early as 2001, Biosearch sold BHQ® probes, active esters, and amidites to Defendant Life Tech's predecessor, Invitrogen Corporation. At all times relevant herein Biosearch included a written comprehensive limited use Agreement (the "EULA") with all purchases of its BHQ®s. A true and correct copy of the EULA is attached as Exhibit A. The EULA was included in all contracts, published on Biosearch's web site, and included in any shipments made to customers or by licensed Distributors. The EULA prohibits use of BHQ®s, or products incorporating them, for anything other than research and development purposes and explicitly prohibits "any commercial, clinical, *in vitro* diagnostic or other use" of BHQ®s, or products incorporating them, and further disclaims any "implied license for commercial use" with respect to the same. Under the EULA, "commercial use" includes but is not limited to the sale of BHQ®s, or products incorporating them. Biosearch is informed and believes and on this basis alleges that Defendant Life Tech was aware of the EULA's terms, understood the limitations imposed by the EULA, and agreed to be bound by the terms of the EULA.

11. In 2009, the United States Center for Disease Control ("CDC") selected the Biosearch BHQ® for use worldwide in testing for the H1N1 virus. Biosearch anticipated selling its BHQ® probes worldwide and believed it would generate substantial sales of such probes as a result of being selected by the CDC.

12. Biosearch is informed and believes, and on that basis alleges, that Life Tech learned sometime in 2009 that Biosearch's BHQ® had been selected as the quencher of choice for use in the H1N1 probes, and arranged with a Biosearch third-party supplier, Glen Research, to purchase BHQ®s from the third-party distributor of BHQ®s. The third-party distributor's distribution rights specifically limited the use of BHQ®s to research and development only and excluded commercial, clinical, and *in vitro* diagnostic uses.

13. On information and belief, Life Tech in contravention of the Biosearch license has sold, and continues to sell, probes labeled with Biosearch's BHQ®s at least as part of or in connection with the Influenza A (H1N1) Primer and Probe Set (Cat. No. A11400) (hereinafter the "H1N1 Kit"), marketed and sold under the "Invitrogen" brand, which may be used to clinically diagnose swine flu.

14. On information and belief, Life Tech has sold, and continues to sell, H1N1 Kits containing Biosearch's BHQ®s to persons, entities, and/or government agencies for commercial, clinical, and/or *in vitro* diagnostic purposes, including testing and detecting the presence of swine flu.

## FIRST COUNTERCLAIM
**(Breach of Contract)**

15. Biosearch repeats and realleges each and every allegation made in paragraphs 1 through 14 of Biosearch's Counterclaims as if fully set forth herein.

16. On information and belief, Life Tech breached one or more terms of the EULA by selling H1N1 Kits containing probes labeled with Biosearch's BHQ®s for commercial, clinical, and/or *in vitro* diagnostic purposes.

17. As a result of Life Tech's breach of the EULA, Biosearch has suffered and will continue to suffer harm to its business.

18. Biosearch is entitled to specific performance and injunctive relief under the EULA, restraining Life Tech from further sales or other uses of Biosearch's BHQ®s, or products containing the same, in violation of the EULA.

19. Biosearch is further entitled to recover from Life Tech the actual, compensatory, and

consequential damages sustained by Biosearch as a result of Life Tech's breach of the EULA, or the value of their unjust enrichment, in an amount to be determined at trial.

## SECOND COUNTERCLAIM
**Unfair Competition**
**(Cal. Bus. & Prof. Code § 17200)**

20. Biosearch repeats and realleges each and every allegation made in paragraphs 1 through 14 of Biosearch's Counterclaims as if fully set forth herein.

21. Biosearch excluded "any commercial, clinical, *in vitro* diagnostic or other use" of BHQ®s, or products incorporating them because said uses are considered part of the "commercial market." Biosearch's business model includes preserving the "commercial market" for its BHQ®s, for Biosearch or its licensees.

22. On information and belief, the H1N1 pandemic was recognized by Life Tech as an opportunity to use the BHQ®s to sell large amounts of products worldwide in the "commercial market."

23. On information and belief, Life Tech was aware that it could exploit these commercial opportunities if it could offer BHQ®'s for clinical, *in vitro* diagnostic and other non investigative uses.

24. On information and belief, Life Tech decided to breach its license obligations to Biosearch, and exploit the commercial opportunity presented by the H1N1 pandemic. On information and belief, Life Tech developed a scheme to exploit the fact that it was using the CDC approved BHQ®s and used Life Tech's worldwide sales organization to market the H1N1 probes with BHQ®s. Life Tech was aware that Biosearch was a small company with a limited sales force and distribution and that using Life Tech's sales force and offering BHQ®s, Life Tech would dominate the worldwide market for H1N1 probes that used the BHQ®s, and prevent Biosearch from exploiting this commercial opportunity.

25. Life Tech purchased the BHQ®s from Glen Research, while fully aware that the BHQ®s could only be used for research. Thereafter, Life Tech advertised that its probes contained BHQ®s from Biosearch and sold the probes for use in the commercial markets previously described. *See* Exhibit B attached hereto and incorporated herein by reference.

26. By wrongfully using the BHQ®s in contravention of the license terms, Life Tech was able to obtain millions of dollars in sales that should have gone to Biosearch, and prevented Biosearch from exploiting the opportunity to make sales of BHQ® in the worldwide commercial market.

27. By the acts alleged in the preceding paragraph, Life Tech has committed business acts and practices that are unlawful and unfair in violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200 *et seq.*

28. Life Tech's business acts and practices are unlawful and unfair in violation of the UCL because Life Tech bought BHQ®s from Biosearch and Glen Research pursuant to the EULA, which restricts the use to research and development purposes, but nonetheless used the BHQ®s for unauthorized purposes in violation of the EULA, including profiting from the commercial sales of such BHQ®s as part of H1N1 Kits.

29. Life Tech's business acts and practices are unlawful and unfair in violation of the UCL because Life Tech's acts impair fair and honest competition and otherwise significantly harm competition in the market for Biosearch's products.

30. Life Tech will continue to use Biosearch's BHQ®s for unauthorized purposes, unless enjoined by the Court. By reason of the alleged acts and conduct of Life Tech, Biosearch has suffered and will continue to suffer harm and damage, including the loss of a competitive position in the market for its BHQ®-labeled probes. The amount of this harm and damage will be difficult to ascertain, and Biosearch will be without an adequate remedy at law. Biosearch is entitled to injunctive relief restraining Life Tech from further sales or other uses of Biosearch's BHQ®s, or products containing the same, in violation of the EULA.

31. In light of the acts and conduct of Life Tech alleged herein, Biosearch is entitled to any and all orders and judgments necessary to compensate Biosearch for the harm caused to it by Life Tech and to prevent Life Tech from continuing to engage in such unlawful, unfair, and deceptive business practices intended to benefit Life Tech to the detriment of Biosearch, including restitution and injunctive relief.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2

10

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

**THIRD COUNTERCLAIM**
**Unfair Advertising**
**(Cal. Bus. & Prof. Code § 17500)**

32. Biosearch repeats and realleges each and every allegation made in paragraphs 1 through 14 of Biosearch's Counterclaims as if fully set forth herein.

33. On information and belief, at least as part of or in connection with sales of the H1N1 Kit, Life Tech advertised that they had the right to sell commercially Biosearch's BHQ®s or products incorporating the BHQ®s.

34. This advertising was untrue and misleading because Life Tech did not in fact have the right to sell commercially, probes containing Biosearch's BHQ®s or products incorporating these BHQ®s.

35. On information and belief Life Tech knew, or by the exercise of reasonable care should have known, that this advertising was untrue or misleading at least because the EULA prohibits "commercial use," which is defined as without limitation "sale[s]," of Biosearch's BHQ®s, or products incorporating these BHQ®s.

36. Biosearch has been injured by this untrue and misleading advertising.

37. Biosearch is entitled to an injunction restraining Life Tech, its agents, employees, representatives and all persons acting in concert with Life Tech from engaging in further acts of untrue and misleading advertising.

**FOURTH COUNTERCLAIM**
**(Intentional Interference With Prospective Economic Advantage)**

38. Biosearch repeats and realleges each and every allegation made in paragraphs 1 through 14 of Biosearch's Counterclaims as if fully set forth herein.

39. Life Tech knew of Biosearch's ongoing business relationships with governments and other entities around the world with respect to Biosearch's own H1N1 kits, which consist of probes labeled with Biosearch's BHQ®s and are used to discriminate H1N1-related viral strains (the "Biosearch H1N1 Kits"). Life Tech further knew of Biosearch's marketing activities concerning the Biosearch H1N1 Kits. By way of example, in or around August 27, 2009, Biosearch was approached by Gene Logic, a company with direct contacts in the marketplace in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2

11

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

1  India, for the manufacture and supply of over $10 to $15 million worth of the Biosearch H1N1
2  Kits for the Indian market.

3  40.  Life Tech intentionally interfered with Biosearch's prospective economic
4  advantage with at least Gene Logic along with its Indian market contacts.  By way of example,
5  Life Tech purchased the same probes that are included with the Biosearch H1N1 Kit from Glen
6  Research, which is licensed by Biosearch to make and sell these probes for *research purposes*
7  *only*.  Life Tech knew that these probes were subject to a license that restricts their use for
8  research purposes at least because, on information and belief, Glen Research advised its
9  customers in writing and on its website of the restricted use for BHQ®s.

10  41.  Because these BHQ®s were subject to a limited-use license, on information and
11  belief, Life Tech was able to purchase these BHQ®s at price far below what BHQ®s licensed for
12  commercial uses, such as for H1N1 testing, command and are in fact sold for.  Life Tech
13  subsequently used these BHQ®s to create kits virtually identical to the Biosearch H1N1 Kit and
14  sold these kits in the Indian market.

15  42.  On information and belief, Life Tech lured potential suppliers for the Indian
16  market into purchasing kits from it, rather than from Biosearch, by offering Life Tech's kits at a
17  substantial discount.  Nonetheless, on information and belief, Life Tech still reaped a substantial
18  profit from the sales of these kits in the Indian market.  As a direct result of Life Tech's actions,
19  Biosearch has been damaged in an amount according to proof.

20  43.  Life Tech's actions were undertaken with fraud, malice or oppression, or with a
21  conscious disregard of the rights of Biosearch, and, therefore, Biosearch is entitled to an award of
22  exemplary and punitive damages against Life Tech in an amount according to proof.

23  **FIFTH COUNTERCLAIM**
24  **(Common Law Unfair Competition)**

25  44.  Biosearch repeats and realleges each and every allegation made in paragraphs 1
26  through 14 of Biosearch's Counterclaims as if fully set forth herein.

27  45.  Biosearch invested substantial time and money in developing BHQ®s.

28  46.  By using probes labeled with BHQ®s in violation of the EULA, including

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2                                12

profiting from unauthorized sales of BHQ®-labeled probes, Life Tech has gained an unfair competitive advantage over Biosearch.

47. Life Tech will continue to use Biosearch's BHQ®s for unauthorized purposes, unless enjoined by the Court. By reason of the alleged acts and conduct of Life Tech, Biosearch has suffered and will continue to suffer harm and damage, including the loss of a competitive position in the market for its BHQ®-labeled probes. The amount of this harm and damage will be difficult to ascertain, and Biosearch will be without an adequate remedy at law. Biosearch is entitled to injunctive relief restraining Life Tech from further sales or other uses of Biosearch's BHQ®s, or products containing the same, in violation of the EULA.

48. By reason of the alleged acts and conduct of Life Tech, Life Tech received a benefit and unjustly retained and continues to retain that benefit at the expense of and without compensating Biosearch.

49. Biosearch is further entitled to recover from Life Tech the greater of restitution for any damages sustained by Biosearch as a result of the alleged acts and conduct of Life Tech, or the value of Life Tech's unjust enrichment, in an amount to be determined at trial. Biosearch is presently unable to ascertain the full extent of such damages.

50. On information and belief, Life Tech's conduct and actions were both willful and malicious, and Biosearch is entitled to an award of punitive damages and attorneys' fees against Life Tech.

**SIXTH COUNTERCLAIM**
**(Infringement of U.S. Patent No. 7,019,129)**

51. Biosearch repeats and realleges each and every allegation made in paragraphs 1 through 14 of Biosearch's Counterclaims as if fully set forth herein.

52. United States Patent No. 7,019,129, entitled "Dark Quenchers for Donor-Acceptor Energy Transfer" (hereinafter, the "'129 Patent," a true and correct copy of which is attached hereto as Exhibit C), was duly and legally issued on March 28, 2006.

53. Biosearch is the assignee of the '129 Patent.

54. On information and belief, Life Tech has been and still is making, using, selling,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2

13

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

1  and/or offering for sale oligonucleotide probes incorporating BHQ®s that infringe, directly,

2  indirectly, contributorily, and/or by inducement, the claims of the '129 Patent, and will continue

3  to do so unless enjoined by this Court.

4      55.    Biosearch has suffered and continues to suffer damages as a result of Life Tech's

5  infringement of the claims of the '129 Patent.

6      56.    Biosearch will suffer irreparable harm due to Life Tech's continuing infringement

7  of the '129 Patent, and Biosearch has no adequate remedy at law for this continuing infringement.

8      57.    Life Tech will continue to infringe the '129 Patent and irreparably harm Biosearch

9  unless and until enjoined by this Court.

10      58.    Life Tech has had actual knowledge of the '129 Patent since at least June 14, 2006.

11      59.    Under the circumstances, and on further information and belief, Life Tech's

12  infringement of the '129 Patent has been, and continues to be, willful.

### SEVENTH COUNTERCLAIM
### (Infringement of U.S. Patent No. 7,109,312)

60.    Biosearch repeats and realleges each and every allegation made in paragraphs 1 through 14 of Biosearch's Counterclaims as if fully set forth herein.

61.    United States Patent No. 7,109,312, entitled "Dark Quenchers for Donor-Acceptor Energy Transfer" (hereinafter, the "'312 Patent," a true and correct copy of which is attached hereto as Exhibit D), was duly and legally issued on September 19, 2006.

62.    Biosearch is the assignee of the '312 Patent.

63.    On information and belief, Life Tech has been and still is making, using, selling, and/or offering for sale oligonucleotide probes incorporating BHQ®s that infringe, directly, indirectly, contributorily, and/or by inducement, the claims of the '312 Patent, and will continue to do so unless enjoined by this Court.

64.    Biosearch has suffered and continues to suffer damages as a result of Life Tech's infringement of the claims of the '312 Patent.

65.    Biosearch will suffer irreparable harm due to Life Tech's continuing infringement of the '312 Patent, and Biosearch has no adequate remedy at law for this continuing infringement.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2      14

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

66. Life Tech will continue to infringe the '312 Patent and irreparably harm Biosearch unless and until enjoined by this Court.

67. Life Tech has had actual knowledge of the '312 Patent since at least September 19, 2006.

68. Under the circumstances, and on further information and belief, Life Tech's infringement of the '312 Patent has been, and continues to be, willful.

**EIGHTH COUNTERCLAIM**
**(Infringement of U.S. Patent No. 7,582,432)**

69. Biosearch repeats and realleges each and every allegation made in paragraphs 1 through 14 of Biosearch's Counterclaims as if fully set forth herein.

70. United States Patent No. 7,582,432, entitled "Dark Quenchers for Donor-Acceptor Energy Transfer" (hereinafter, the "'432 Patent," a true and correct copy of which is attached hereto as Exhibit E), was duly and legally issued on September 1, 2009.

71. Biosearch is the assignee of the '432 Patent.

72. On information and belief, Life Tech has been and still is making, using, selling, and/or offering for sale oligonucleotide probes incorporating BHQ®s that infringe, directly, indirectly, contributorily, and/or by inducement, the claims of the '432 Patent, and will continue to do so unless enjoined by this Court.

73. Biosearch has suffered and continues to suffer damages as a result of Life Tech's infringement of the claims of the '432 Patent.

74. Biosearch will suffer irreparable harm due to Life Tech's continuing infringement of the '432 Patent, and Biosearch has no adequate remedy at law for this continuing infringement.

75. Life Tech will continue to infringe the '432 Patent and irreparably harm Biosearch unless and until enjoined by this Court.

76. Life Tech has had actual knowledge of the '432 Patent since at least September 1, 2009.

77. Under the circumstances, and on further information and belief, Life Tech's infringement of the '432 Patent has been, and continues to be, willful.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22244321.2

15

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)

# PRAYER FOR RELIEF

WHEREFORE, Biosearch respectfully prays for the entry of judgment as follows:

(a) That Life Tech be held to have breached the EULA;

(b) That Life Tech be held to have engaged in unlawful and unfair competition within the meaning of California Business and Professions Code §§ 17200 *et seq.*;

(c) That Life Tech be held to have engaged in unfair advertising within the meaning of California Business & Professions Code § 17500;

(d) That Life Tech be held to have intentionally interfered with Biosearch's prospective economic advantage;

(e) That Life Tech be held to have engaged in unfair competition within the meaning of California common law;

(f) That the Court enjoin and restrain Life Tech from using Biosearch's BHQ®s, or products containing the same, in violation of the EULA;

(g) That the Court enjoin and restrain Life Tech from any untrue and misleading advertising in connection with at least the H1N1 Kit;

(h) That Biosearch have an accounting for damages and for all of Life Tech's profits from its actions complained of herein;

(i) That Biosearch be awarded all actual, compensatory, and consequential damages suffered by Biosearch by reason of Life Tech's conduct, as well as the value of Life Tech's unjust enrichment, any profits of Life Tech, a reasonable royalty, and/or restitution that are attributable to Life Tech's breach of contract and unfair competition not taken into account in computing actual, compensatory, and consequential damages, and that exemplary and punitive damages be awarded as authorized under the law;

(j) That Biosearch be awarded its reasonable attorneys' fees in an amount to be determined at trial; all costs of suit herein incurred, including investigative costs; and pre- and post-judgment interest as provided by law;

(k) Permanently enjoining Life Tech, its subsidiaries, agents, officers, employees, directors, licensees, servants, successors, assigns and all other acting in privity or in

1  concert with it from infringing, actively inducing infringement, or contributing to the
2  infringement of the '129 Patent, the '312 Patent, and the '432 Patent;

3      (l)    Awarding Biosearch damages adequate to compensate it for the foregoing
4  infringement, with both pre-judgment and post-judgment interest;

5      (m)    Finding that this is an exceptional case and awarding Biosearch its
6  reasonable costs of suit and attorneys' fees as the prevailing party pursuant to 35 U.S.C. § 285;
7  and

8      (n)    That the Court award such further relief as deemed just and proper, or that
9  Biosearch may be entitled as a matter of law or equity.

Dated: March 4, 2011                                          Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By /s/ Daniel Johnson, Jr.
Daniel Johnson, Jr.
Attorneys for Defendant and
Counterclaimant
BIOSEARCH TECHNOLOGIES, INC.
E-mail: djjohnson@morganlewis.com

### DEMAND FOR JURY TRIAL

Biosearch hereby demands trial by jury on all issues so triable.

Dated: March 4, 2011                                          Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By /s/ Daniel Johnson, Jr.
Daniel Johnson, Jr.
Attorneys for Defendant and
Counterclaimant
BIOSEARCH TECHNOLOGIES, INC.
E-mail: djjohnson@morganlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2011, I electronically filed the following document(s) with the Clerk of the Court for the United States District Court, Southern District of California by using the CM/ECF system:

**ANSWER TO COMPLAINT AND COUNTERCLAIMS**

The participants listed below in the case whom are "active" registered CM/ECF users will be served by the CM/ECF system:

Cora Louise Schmid
Life Technologies Corporation
850 Lincoln Centre Drive
Foster City, CA  94404
Email: cora.schmid@lifetech.com

Kenneth E. Keller
Krieg, Keller, Sloan, Reilley & Roman LLP
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
Email: kkeller@kksrr.com

Kurtis D. MacFerrin
Life Technologies Corporation
5791 Van Allen Way
Carlsbad, CA  92008
Email: kurtis.macferrin@lifetech.com

I declare that I am employed by a member of the bar of this Court, at whose direction this service was made.

Dated:  March 4, 2011                                       /s/ Mary Jensen
                                                                          Mary Jensen

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/22244321.2                                  18

ANSWER TO COMPLAINT AND COUNTERCLAIMS, CASE NO. 10-CV-2665 JAH (WVG)