# EXHIBIT A

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Daniel Johnson, Jr., SBN 57409<br>Morgan, Lewis & Bockius LLP<br>One Market, Spear Street Tower<br><br>San Francisco, CA 94105<br>TELEPHONE NO.: (415) 442-1000   FAX NO.: (415) 442-1001<br>ATTORNEY FOR *(Name):* Biosearch Technologies, Inc. | FOR COURT USE ONLY<br><br>**ENDORSED**<br>**FILED**<br>ALAMEDA COUNTY<br><br>APR 2 3 2010<br><br>CLERK OF THE SUPERIOR COURT<br>By BARBARA LAMOTTE<br>Deputy |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon St.
MAILING ADDRESS: René C. Davidson Alameda County Courthouse
CITY AND ZIP CODE: Oakland, CA  94612
BRANCH NAME:

CASE NAME:  Biosearch Technologies, Inc. v. Life
Technologies Corporation

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RG10511219 |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount      (Amount<br>demanded      demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [X] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[ ] Insurance coverage (18)<br>[ ] Other contract (37) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30) |
| Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort | | |
| [ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | Real Property<br>[ ] Eminent domain/Inverse<br>condemnation (14)<br>[ ] Wrongful eviction (33)<br>[ ] Other real property (26) | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| Non-PI/PD/WD (Other) Tort | | Enforcement of Judgment |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | Unlawful Detainer<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>Judicial Review<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11)<br>[ ] Writ of mandate (02) | [ ] Enforcement of judgment (20)<br>Miscellaneous Civil Complaint<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>Miscellaneous Civil Petition<br>[ ] Partnership and corporate governance (21)<br>[ ] Other petition *(not specified above)* (43) |
| Employment<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4. Number of causes of action *(specify):*  Six
5. This case [ ] is  [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 4/22/2010
Daniel Johnson, Jr. SBN 57409
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10



## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
    Auto (22)—Personal Injury/Property
        Damage/Wrongful Death
    Uninsured Motorist (46) *(if the
        case involves an uninsured
        motorist claim subject to
        arbitration, check this item
        instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
    Asbestos (04)
        Asbestos Property Damage
        Asbestos Personal Injury/
            Wrongful Death
    Product Liability *(not asbestos or
        toxic/environmental)* (24)
    Medical Malpractice (45)
        Medical Malpractice—
            Physicians & Surgeons
        Other Professional Health Care
            Malpractice
    Other PI/PD/WD (23)
        Premises Liability (e.g., slip
            and fall)
        Intentional Bodily Injury/PD/WD
            (e.g., assault, vandalism)
        Intentional Infliction of
            Emotional Distress
        Negligent Infliction of
            Emotional Distress
        Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
    Business Tort/Unfair Business
        Practice (07)
    Civil Rights (e.g., discrimination,
        false arrest) *(not civil
        harassment)* (08)
    Defamation (e.g., slander, libel)
        (13)
    Fraud (16)
    Intellectual Property (19)
    Professional Negligence (25)
        Legal Malpractice
        Other Professional Malpractice
            *(not medical or legal)*
    Other Non-PI/PD/WD Tort (35)
**Employment**
    Wrongful Termination (36)
    Other Employment (15)

**Contract**
    Breach of Contract/Warranty (06)
        Breach of Rental/Lease
            Contract *(not unlawful detainer
                or wrongful eviction)*
        Contract/Warranty Breach—Seller
            Plaintiff *(not fraud or negligence)*
        Negligent Breach of Contract/
            Warranty
        Other Breach of Contract/Warranty
    Collections (e.g., money owed, open
        book accounts) (09)
        Collection Case—Seller Plaintiff
        Other Promissory Note/Collections
            Case
    Insurance Coverage *(not provisionally
        complex)* (18)
        Auto Subrogation
        Other Coverage
    Other Contract (37)
        Contractual Fraud
        Other Contract Dispute
**Real Property**
    Eminent Domain/Inverse
        Condemnation (14)
    Wrongful Eviction (33)
    Other Real Property (e.g., quiet title) (26)
        Writ of Possession of Real Property
        Mortgage Foreclosure
        Quiet Title
        Other Real Property *(not eminent
            domain, landlord/tenant, or
            foreclosure)*
**Unlawful Detainer**
    Commercial (31)
    Residential (32)
    Drugs (38) *(if the case involves illegal
        drugs, check this item; otherwise,
        report as Commercial or Residential)*
**Judicial Review**
    Asset Forfeiture (05)
    Petition Re: Arbitration Award (11)
    Writ of Mandate (02)
        Writ–Administrative Mandamus
        Writ–Mandamus on Limited Court
            Case Matter
        Writ–Other Limited Court Case
            Review
    Other Judicial Review (39)
        Review of Health Officer Order
        Notice of Appeal–Labor
            Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
    Antitrust/Trade Regulation (03)
    Construction Defect (10)
    Claims Involving Mass Tort (40)
    Securities Litigation (28)
    Environmental/Toxic Tort (30)
    Insurance Coverage Claims
        *(arising from provisionally complex
        case type listed above)* (41)
**Enforcement of Judgment**
    Enforcement of Judgment (20)
        Abstract of Judgment (Out of
            County)
        Confession of Judgment *(non-
            domestic relations)*
        Sister State Judgment
        Administrative Agency Award
            *(not unpaid taxes)*
        Petition/Certification of Entry of
            Judgment on Unpaid Taxes
        Other Enforcement of Judgment
            Case
**Miscellaneous Civil Complaint**
    RICO (27)
    Other Complaint *(not specified
        above)* (42)
        Declaratory Relief Only
        Injunctive Relief Only *(non-
            harassment)*
        Mechanics Lien
        Other Commercial Complaint
            Case *(non-tort/non-complex)*
        Other Civil Complaint
            *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
    Partnership and Corporate
        Governance (21)
    Other Petition *(not specified
        above)* (43)
        Civil Harassment
        Workplace Violence
        Elder/Dependent Adult
            Abuse
        Election Contest
        Petition for Name Change
        Petition for Relief from Late
            Claim
        Other Civil Petition

CM-010 [Rev. July 1, 2007]        **CIVIL CASE COVER SHEET**        Page 2 of 2

A2

*Unified Rules of the Superior Court of California, County of Alameda*

F. ADDENDUM TO CIVIL CASE COVER SHEET

| Short Title: Biosearch Technologies, Inc. v. Life Technologies Corporation | Case Number: |
|---|---|

### CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

| [X] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447)<br>[ ] Pleasanton, Gale-Schenone Hall of Justice (448) |
|---|---|

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | | | Is this an uninsured motorist case? [ ] yes [ ] no |
| Other PI /PD /<br>WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD /<br>WD Tort | Bus tort / unfair bus. practice (07) | [ ] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wmty (06) | [X] | 04 | Breach contract / Wmty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally<br>Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of<br>Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

Within the Unlawful Detainer rows: **Is the deft. in possession of the property?** [ ] Yes [ ] No

Within the Writ of Mandate row: **Is this a CEQA action (Publ.Res.Code section 21000 et seq)** [ ] Yes [ ] No

202-19 (5/1/00)

A-13

A3

APR-23-2010 FRI 11:37 AM MORGAN LEWIS          FAX NO. 6508437771          P. 04

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
LIFE TECHNOLOGIES CORPORATION

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

APR 23 2010

CLERK OF THE SUPERIOR COURT
By ___BARBARA LAMOTTE___
                                    Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
BIOSEARCH TECHNOLOGIES, INC.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court of California, County of Alameda
René C. Davidson Alameda County Courthouse
1225 Fallon Street
Oakland, CA  94612

CASE NUMBER:
(Número del Caso):
RG10511219

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Daniel Johnson, Jr., SBN 57409            (415) 442-1000   (415) 442-1001
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA  94105

DATE:  APR 23 2010         Clerk, by  BARBARA LAMOTTE        , Deputy
(Fecha)       PAT S. SWEETEN   (Secretario)                   (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [X] on behalf of (specify): Life Technologies Corporation
   under: [X] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [X] by personal delivery on (date): 5/20/10

[SEAL]

SUMMONS

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Code of Civil Procedure §§ 412.20, 465

Page 1 of 1

Legal
Solutions
105M2621RAD022F- 4/23/2010 11:41:52 AM

A4

1   DANIEL JOHNSON, JR., State Bar No. 57409
    RITA E. TAUTKUS, State Bar No. 162090
2   AHREN C. HOFFMAN, State Bar No. 250469
    MORGAN, LEWIS & BOCKIUS LLP
3   One Market, Spear Street Tower
    San Francisco, CA  94105-1126
4   Tel:  415.442.1000
    Fax:  415.442.1001
5   Email:  djjohnson@morganlewis.com
            rtautkus@morganlewis.com
6           ahoffman@morganlewis.com

7   Attorneys for Plaintiff
    BIOSEARCH TECHNOLOGIES, INC.

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                                COUNTY OF ALAMEDA

10

11  BIOSEARCH TECHNOLOGIES, INC.,          Case No.

12                      Plaintiff,          **COMPLAINT FOR**

13         v.                               **(1) BREACH OF CONTRACT**
                                            **(2) UNFAIR COMPETITION**
14  LIFE TECHNOLOGIES CORPORATION,              **(CAL. BUS. & PROF. CODE § 17200)**
    and DOES 1 through 25, inclusive,       **(3) COMMON LAW UNFAIR**
15                                              **COMPETITION**
                        Defendants.         **(4) UNJUST ENRICHMENT**
16                                          **(5) UNFAIR ADVERTISING**
                                                **(CAL. BUS. & PROF. CODE § 17500)**
17                                          **(6) INTERFERENCE WITH**
                                                **PROSPECTIVE ECONOMIC**
18                                              **ADVANTAGE**

19                                          **Amount demanded exceeds $25,000**

20                                          **DEMAND FOR JURY TRIAL**

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
ATTORNEYS AT LAW
 SAN FRANCISCO

DB2/21682388.1

                              COMPLAINT

                                                                      A5

**INTRODUCTION AND BACKGROUND**

Plaintiff Biosearch Technologies, Inc. ("Biosearch") for its complaint against Defendant Life Technologies Corporation ("Defendant Life Technologies"), and Does 1 through 25 (collectively, "Defendants"), allege as follows:

**THE PARTIES**

1.      Plaintiff Biosearch is a California corporation that maintains its principal place of business in Novato, California 94949.

2.      On information and belief, Defendant Life Technologies is a Delaware corporation that maintains a place of business at 6055 Sunol Drive, Pleasanton, California 94566.  Defendant Life Technologies was formed from the merger of Invitrogen Corporation and Applera Corporation's Applied Biosystems Group in June 2008.

3.      Biosearch is unaware of the names of the Defendants sued herein as DOES 1 through 25 and thus sues these Defendants by those fictitious names.  Biosearch will amend this complaint to allege their true names and capacities when ascertained.  Biosearch alleges on information and belief that each of said fictitiously named Defendants is responsible in some manner for the damages alleged in this complaint and that the injuries sustained by Biosearch were proximately caused by the actions and/or omissions of those Defendants.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10 because Defendant Life Technologies does business in and has sufficient contacts with the State of California, and each cause of action is predicated on California law.

5.      Venue of this action in Alameda County is proper pursuant to California Code of Civil Procedure § 395.5 because Alameda County is where, among other things, Defendant Life Technologies maintains a place of business and the Comprehensive Limited Use Agreement (the "EULA," attached hereto as Exhibit A) at issue in this case was to be performed and where, in part, the EULA was breached.

6.      Venue is also proper in this Court pursuant to California Code of Civil Procedure § 395.5 because the injury for which relief is sought occurred in Alameda County.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1

2

COMPLAINT

A6

## NATURE OF THIS ACTION AND GENERAL ALLEGATIONS

7.      Biosearch is a leading provider of specialized chemical reagants and oligonucleotide probes for use in pharmacogenomic research, DNA sequencing, and gene expression analysis.  Among other things, Biosearch supplies fluorescence-quenched probes and primers that are a critical component to gene expression analysis and disease detection.

8.      The fluorescence-quenched probes sold by Biosearch incorporate, on one end, a reporter dye that emits fluorescence, and, on the other end, a quencher dye that inhibits fluorescence from the reporter dye.  In or around 2000, Biosearch developed an exceptionally dark quencher, with broad absorption spectra, known as the Black Hole Quencher® ("BHQ®").  The BHQ® technology has been patented and has become a standard product in the industry and is currently licensed to numerous biotechnology companies.

9.      From at least as early as 2001, Biosearch sold BHQ® probes, active esters, and amidites to Defendant Life Technologies' predecessor, Invitrogen Corporation.  At all times relevant herein Biosearch included a EULA with all purchases of its BHQ®s.  The EULA was included in all contracts, published on Biosearch's web site, and included in any shipments made to customers or by licensed Distributors.   The EULA prohibits use of BHQ®s, or products incorporating them, for anything other than research and development purposes and explicitly prohibits "any commercial, clinical, *in vitro* diagnostic or other use" of BHQ®s, or products incorporating them, and further disclaims any "implied license for commercial use" with respect to the same.  Under the EULA, "commercial use" includes but is not limited to the sale of BHQ®s, or products incorporating them.  Biosearch is informed and believes and on this basis alleges that Defendant Life Technologies was aware of the EULA's terms, understood the limitations imposed by the EULA, and agreed to be bound by the terms of the EULA.

10.     In 2009, the United States Center for Disease Control ("CDC") selected the Biosearch BHQ® for use worldwide in testing for the H1N1 virus.  Biosearch anticipated selling its BHQ® probes worldwide and believed it would generate substantial sales of such probes as a result of being selected by the CDC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1

3

COMPLAINT

A7

11.     Biosearch is informed and believes, and on that basis alleges, that Defendant Life Technologies learned sometime in 2009 that Biosearch's BHQ® had been selected as the quencher of choice for use in the H1N1 probes, and arranged with a Biosearch third-party supplier, Glen Research, to purchase BHQ®s from the third-party distributor of BHQ®s.  The third-party distributor's distribution rights specifically limited the use of BHQ®s to research and development only and excluded commercial, clinical, and *in vitro* diagnostic uses.

12.     On information and belief, Defendant Life Technologies in contravention of the Biosearch license has sold, and continues to sell, probes labeled with Biosearch's BHQ®s at least as part of or in connection with the Influenza A (H1N1) Primer and Probe Set (Cat. No. A11400) (hereinafter the "H1N1 Kit"), marketed and sold under the "Invitrogen" brand, which may be used to clinically diagnose swine flu.

13.     On information and belief, Defendant Life Technologies has sold, and continues to sell, H1N1 Kits containing Biosearch's BHQ®s to persons, entities, and/or government agencies for commercial, clinical, and/or *in vitro* diagnostic purposes, including testing and detecting the presence of swine flu.

### COUNT ONE
### (Breach of Contract by Defendant)

14.     Biosearch repeats and realleges each and every allegation made in the previous paragraphs as if fully set forth herein.

15.     On information and belief, Defendant Life Technologies breached one or more terms of the EULA by selling H1N1 Kits containing probes labeled with Biosearch's BHQ®s for commercial, clinical, and/or *in vitro* diagnostic purposes.

16.     As a result of Defendant Life Technologies' breach of the EULA, Biosearch has suffered and will continue to suffer harm to its business.

17.     Biosearch is entitled to specific performance and injunctive relief under the EULA, restraining Defendant Life Technologies from further sales or other uses of Biosearch's BHQ®s, or products containing the same, in violation of the EULA.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1                                    4
                                          COMPLAINT

A8

18.     Biosearch is further entitled to recover from Defendant Life Technologies the actual, compensatory, and consequential damages sustained by Biosearch as a result of Defendant Life Technologies' breach of the EULA, or the value of their unjust enrichment, in an amount to be determined at trial but greater than $25,000.

## COUNT TWO
### Unfair Competition
### (Cal. Bus. & Prof. Code § 17200)

19.     Biosearch repeats and realleges each and every allegation made in paragraphs 1-13 as if fully set forth herein.

20.     Biosearch excluded "any commercial, clinical, *in vitro* diagnostic or other use" of BHQ®s, or products incorporating them because said uses are considered part of the "commercial market." Biosearch's business model includes preserving the "commercial market" for its BHQ®s, for Biosearch or its licensees.

21.     On information and belief, the H1N1 pandemic was recognized by Defendant Life Technologies as an opportunity to use the BHQ®s to sell large amounts of products worldwide in the "commercial market."

22.     On information and belief, Defendant Life Technologies was aware that it could exploit these commercial opportunities if it could offer BHQ®'s for clinical, *in vitro* diagnostic and other non investigative uses.

23.     On information and belief, Defendant Life Technologies decided to breach its license obligations to Biosearch, and exploit the commercial opportunity presented by the H1N1 pandemic. On information and belief, Defendant Life Technologies developed a scheme to exploit the fact that it was using the CDC approved BHQ®s and used Defendant Life Technologies' worldwide sales organization to market the H1N1 probes with BHQ®s. Defendant Life Technologies was aware that Biosearch was a small company with a limited sales force and distribution and that using Defendant Life Technologies' sales force and offering BHQ®s, Defendant Life Technologies would dominate the worldwide market for H1N1 probes that used the BHQ®s, and prevent Biosearch from exploiting this commercial opportunity.

BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1

5

COMPLAINT

A9

24.     Defendant Life Technologies purchased the BHQ®s from Glen Research, while fully aware that the BHQ®s could only be used for research.  Thereafter, Defendant Life Technologies advertised that its probes contained BHQ®s from Biosearch and sold the probes for use in the commercial markets previously described.  *See* Exhibit B attached hereto and incorporated herein by reference.

25.     By wrongfully using the BHQ®s in contravention of the license terms, Defendant Life Technologies was able to obtain millions of dollars in sales that should have gone to Biosearch, and prevented Biosearch from exploiting the opportunity to make sales of BHQ® in the worldwide commercial market.

26.     By the acts alleged in the preceding paragraph, Defendant Life Technologies has committed business acts and practices that are unlawful and unfair in violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200 *et seq.*

27.     Defendant Life Technologies' business acts and practices are unlawful and unfair in violation of the UCL because Defendant Life Technologies bought BHQ®s from Biosearch and Glen Research pursuant to the EULA, which restricts the use to research and development purposes, but nonetheless used the BHQ®s for unauthorized purposes in violation of the EULA, including profiting from the commercial sales of such BHQ®s as part of H1N1 Kits.

28.     Defendant Life Technologies' business acts and practices are unlawful and unfair in violation of the UCL because Defendant Life Technologies' acts impair fair and honest competition and otherwise significantly harm competition in the market for Biosearch's products.

29.     Defendant Life Technologies will continue to use Biosearch's BHQ®s for unauthorized purposes, unless enjoined by the Court.  By reason of the alleged acts and conduct of Defendant Life Technologies, Biosearch has suffered and will continue to suffer harm and damage, including the loss of a competitive position in the market for its BHQ®-labeled probes. The amount of this harm and damage will be difficult to ascertain, and Biosearch will be without an adequate remedy at law.  Biosearch is entitled to injunctive relief restraining Defendant Life

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1                          6
                                    COMPLAINT

1  Technologies from further sales or other uses of Biosearch's BHQ®s, or products containing the

2  same, in violation of the EULA.

3       30.    In light of the acts and conduct of Defendant Life Technologies alleged herein,

4  Biosearch is entitled to any and all orders and judgments necessary to compensate Biosearch for

5  the harm caused to it by Defendant Life Technologies and to prevent Defendant Life

6  Technologies from continuing to engage in such unlawful, unfair, and deceptive business

7  practices intended to benefit Defendant Life Technologies to the detriment of Biosearch,

8  including restitution and injunctive relief.

9                    **COUNT THREE**

                  **(Common Law Unfair Competition)**

10

11       31.    Biosearch repeats and realleges each and every allegation made in paragraphs 1-13

12  and 20-27 as if fully set forth herein.

13       32.    Biosearch invested substantial time and money in developing BHQ®s.

14       33.    By using probes labeled with BHQ®s in violation of the EULA, including

15  profiting from unauthorized sales of BHQ®-labeled probes, Defendant Life Technologies has

16  gained an unfair competitive advantage over Biosearch.

17       34.    Defendant Life Technologies will continue to use Biosearch's BHQ®s for

18  unauthorized purposes, unless enjoined by the Court.  By reason of the alleged acts and conduct

19  of Defendant Life Technologies, Biosearch has suffered and will continue to suffer harm and

20  damage, including the loss of a competitive position in the market for its BHQ®-labeled probes.

21  The amount of this harm and damage will be difficult to ascertain, and Biosearch will be without

22  an adequate remedy at law.  Biosearch is entitled to injunctive relief restraining Defendant Life

23  Technologies from further sales or other uses of Biosearch's BHQ®s, or products containing the

24  same, in violation of the EULA.

25       35.    Biosearch is further entitled to recover from Defendant Life Technologies the

26  greater of restitution for any damages sustained by Biosearch as a result of the alleged acts and

27  conduct of Defendant Life Technologies, or the value of Defendant Life Technologies' unjust

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1

7

COMPLAINT

A11

1   enrichment, in an amount to be determined at trial.  Biosearch is presently unable to ascertain the

2   full extent of such damages.

3       36.     On information and belief, Defendant Life Technologies' conduct and actions

4   were both willful and malicious, and Biosearch is entitled to an award of punitive damages and

5   attorneys' fees against Defendant Life Technologies.

6                               **COUNT FOUR**
                              **(Unjust Enrichment)**
7

8       37.     Biosearch repeats and realleges each and every allegation made in paragraphs 1-13

9   and 20-35 as if fully set forth herein.

10      38.     By reason of the alleged acts and conduct of Defendant Life Technologies,

11  Defendant Life Technologies received a benefit and unjustly retained and continues to retain that

12  benefit at the expense of and without compensating Biosearch.

13                              **COUNT FIVE**
                              **Unfair Advertising**
14                      **(Cal. Bus. & Prof. Code § 17500)**

15      39.     Biosearch repeats and realleges each and every allegation made in paragraphs 1-13

16  and 20-35 as if fully set forth herein.

17      40.     On information and belief, at least as part of or in connection with sales of the

18  H1N1 Kit, Defendant Life Technologies advertised that they had the right to sell commercially

19  Biosearch's BHQ®s or products incorporating the BHQ®s.

20      41.     This advertising was untrue and misleading because Defendant Life Technologies

21  did not in fact have the right to sell commercially, probes containing Biosearch's BHQ®s or

22  products incorporating these BHQ®s.

23      42.     On information and belief Defendant Life Technologies knew, or by the exercise

24  of reasonable care should have known, that this advertising was untrue or misleading at least

25  because the EULA prohibits "commercial use," which is defined as without limitation "sale[s],"

26  of Biosearch's BHQ®s, or products incorporating these BHQ®s.

27      43.     Biosearch has been injured by this untrue and misleading advertising.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1                              8

                               COMPLAINT

A12

44.     Biosearch is entitled to an injunction restraining Defendant Life Technologies, its agents, employees, representatives and all persons acting in concert with Defendant Life Technologies from engaging in further acts of untrue and misleading advertising.

<u>**COUNT SIX**</u>
**Intentional Interference With Prospective Economic Advantage**

45.     Biosearch repeats and realleges each and every allegation in paragraphs 1-13 and 20-43 as if fully set forth herein.

46.     Defendant Life Technologies knew of Biosearch's ongoing business relationships with governments and other entities around the world with respect to Biosearch's own H1N1 kits, which consist of probes labeled with Biosearch's BHQ®s and are used to discriminate H1N1-related viral strains (the "Biosearch H1N1 Kits"). Defendant Life Technologies further knew of Biosearch's marketing activities concerning the Biosearch H1N1 Kits. By way of example, in or around August 27, 2009, Biosearch was approached by Gene Logic, a company with direct contacts in the marketplace in India, for the manufacture and supply of over $10 to $15 million worth of the Biosearch H1N1 Kits for the Indian market.

47.     Defendant Life Technologies intentionally interfered with Biosearch's prospective economic advantage with at least Gene Logic along with its Indian market contacts. By way of example, Defendant Life Technologies purchased the same probes that are included with the Biosearch H1N1 Kit from Glen Research, which is licensed by Biosearch to make and sell these probes for *research purposes only*. Defendant Life Technologies knew that these probes were subject to a license that restricts their use for research purposes at least because, on information and belief, Glen Research advised its customers in writing and on its website of the restricted use for BHQ®s.

48.     Because these BHQ®s were subject to a limited-use license, on information and belief, Defendant Life Technologies was able to purchase these BHQ®s at price far below what BHQ®s licensed for commercial uses, such as for H1N1 testing, command and are in fact sold for. Defendant Life Technologies subsequently used these BHQ®s to create kits virtually identical to the Biosearch H1N1 Kit and sold these kits in the Indian market.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1

9

COMPLAINT

A13

49.     On information and belief, Defendant Life Technologies lured potential suppliers for the Indian market into purchasing kits from it, rather than from Biosearch, by offering Defendant Life Technologies' kits at a substantial discount.  Nonetheless, on information and belief, Defendant Life Technologies still reaped a substantial profit from the sales of these kits in the Indian market.  As a direct result of Defendant Life Technologies' actions, Biosearch has been damaged in an amount according to proof.

50.     Defendant Life Technologies' actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of Biosearch, and, therefore, Biosearch is entitled to an award of exemplary and punitive damages against Defendant Life Technologies in an amount according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Biosearch prays for judgment against Defendant Life Technologies as follows:

(a)     That Defendant Life Technologies be held to have breached the EULA;

(b)     That Defendant Life Technologies be held to have engaged in unlawful and unfair competition within the meaning of California Business and Professions Code §§ 17200 *et seq.*;

(c)     That Defendant Life Technologies be held to have engaged in unfair competition within the meaning of California common law;

(d)     That Defendant Life Technologies be held to have been unjustly enriched within the meaning of California common law;

(e)     That Defendant Life Technologies be held to have engaged in unfair advertising within the meaning of California Business & Professions Code § 17500;

(f)     That Defendant Life Technologies be held to have intentionally interfered with Biosearch's prospective economic advantage;

(g)     That the Court enjoin and restrain Defendant Life Technologies from using Biosearch's BHQ®s, or products containing the same, in violation of the EULA;

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1                              10

COMPLAINT

A14

(h) That the Court enjoin and restrain Defendant Life Technologies from any untrue and misleading advertising in connection with at least the H1N1 Kit;

(i) That Biosearch have an accounting for damages and for all of Defendant Life Technologies' profits from its actions complained of herein;

(j) That Biosearch be awarded all actual, compensatory, and consequential damages suffered by Biosearch by reason of Defendant Life Technologies' conduct, as well as the value of Defendant Life Technologies' unjust enrichment, any profits of Defendant Life Technologies', a reasonable royalty, and/or restitution that are attributable to Defendant Life Technologies' breach of contract and unfair competition not taken into account in computing actual, compensatory, and consequential damages, and that exemplary and punitive damages be awarded as authorized under the law;

(k) That Biosearch be awarded its reasonable attorneys' fees in an amount to be determined at trial; all costs of suit herein incurred, including investigative costs; and pre- and post-judgment interest as provided by law;

(l) That the Court grant such other and further relief in law or equity to which Biosearch may be justly entitled as the Court may deem proper.

Dated: April 22, 2010                    Respectfully submitted,

                                         MORGAN, LEWIS & BOCKIUS LLP

                                         By: _____
                                              Daniel Johnson, Jr.

                                         Attorneys for Plaintiff
                                         BIOSEARCH TECHNOLOGIES, INC.

11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21682388.1

COMPLAINT

A15

## DEMAND FOR JURY TRIAL

Biosearch hereby requests a trial by jury.

Dated: April 22, 2010

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: _Daniel Johnson_
Daniel Johnson, Jr.

Attorneys for Plaintiff
BIOSEARCH TECHNOLOGIES, INC.

DB2/21682388.1

12

COMPLAINT

A16

# EXHIBIT A

# BIOSEARCH TECHNOLOGIES, INC.

### BIOSEARCH TECHNOLOGIES, INC. COMPREHENSIVE LIMITED USE AGREEMENT

**Black Hole Quencher®, CAL Fluor® & Quasar Dyes®[1] Limited Use Agreement**

The BHQ®, CAL Fluor® and Quasar® dyes and products incorporating them are to be used for research & development purposes only and may not be used for any commercial, clinical, *in vitro* diagnostic or other use.

Products incorporating these dyes are subject to the proprietary world-wide rights of Biosearch Technologies, Inc. and are made and sold under license from Biosearch Technologies, Inc. There is no implied license for commercial use with respect to the Products and a license must be obtained directly from Biosearch Technologies, Inc. with respect to any proposed commercial use of the Products.

"Commercial Use" includes but is not limited to the sale, lease, license or other transfer of the products or any material derived there from; the sale, lease, license or other grant of rights to use the Products or any material derived or produced from them, or the use of the Products to perform services for a fee for third parties (including fee for service or contract research). Please forward all licensing inquires to licensing@biosearchtech.com.

**BHQ*plus*™ Probes[2] Limited Use Agreement**

This product is covered by patents or patents pending owned by Biosearch Technologies, Inc. and Isis Pharmaceuticals, Inc. ("Isis"). Purchase of this product includes a limited license to use this product solely for internal research and development. This license specifically excludes (and you have no right to use this product for):

> (a) therapeutic or diagnostic applications (including products or services that incorporate this product),
> (b) any *in vivo* toxicity/safety study in support of an investigational new drug application (or foreign counterpart),
> (c) resale (including sale of any products or services that incorporate this product), or
> (d) gene functionalization activities (including products or services that incorporate data derived from gene functionalization activities) if such activities have commercial application, any and all of which require a separate license from Isis.

NEITHER THIS PRODUCT NOR ANY PRODUCT CREATED THROUGH ITS USE MAY BE USED IN HUMAN CLINICAL TRIALS.

In the event you have separate agreements with Isis Pharmaceuticals regarding this product which explicitly state that the foregoing is not applicable to you, your use of this product will be governed by the terms of such agreements. In no event does the limited license included with the purchase of this product expand or alter the scope of the license granted pursuant to such agreement.

**Biosearch Oligonucleotide Products for Non-Coding Analysis Limited Use Agreement**

BTI has been granted a worldwide license to manufacture and distribute oligos, probes and primers for non-commercial research use only (RUO) covered under patents owned by Genetic Technologies Limited (GTG). The GTG patents[3] pertain to methods and processes relating to non-coding regions of all genomes. The GTG license includes Single Nucleotide Polymorphisms (SNP) genotyping and allelic discrimination for RUO.

All Oligonucleotide Products bought from Biosearch (or a Biosearch agent) and used for analysis of non-coding regions, are covered under the GTG non-coding DNA IP for non-commercial research use only (RUO). These Products may not be used for any commercial, clinical, *in vitro* diagnostic or any other non-RUO use. For Product use outside the RUO field, a license must be obtained directly from Genetic Technologies Limited.

---

[1] "Black Hole Quencher", "BHQ", "CAL Fluor" and "Quasar" are fully registered trademarks of Biosearch Technologies, Inc., Novato, California. The BHQ technology is protected by U.S. Patent No. 7,019,129. The CAL Fluor and Quasar technologies are covered by U.S. Patent Applications No. US2005/0170363A1 and US2005/02148343A1 respectively.
[2] BHQ*plus*™ Probes are sold for research use only under agreement with Isis Pharmaceuticals, Inc. of Carlsbad, CA.
[3] The Non-Coding Patents include: US Patent No. 5,789,568; US Patent No. 5,192,659; US Patent No. 5,612,179; US Patent No. 5,851,762; and Foreign counterparts.

---

800-GENOME1; (415) 883-8400          81 Digital Drive          E-mail: info@biosearchtech.com
FAX: (415) 883-8488                Novato, CA 94949              www.biosearchtech.com

A18

# EXHIBIT B

Oligonucleotides



# Influenza A (H1N1) Primer and Probe Set (Cat. no. A11400)

The Influenza A (H1N1) Primer and Probe Set contains the 12 primers and probes listed below. These primers and probes match the WHO/CDC Protocol titled "CDC protocol of realtime RTPCR for swine influenza A(H1N1)" and "28 April 2009 revision 1 (30 April 2009)".

| Primers and probes | Sequence (5' → 3') | Concentration | Quantity |
|---|---|---|---|
| InfA Forward | GAC CRA TCC TGT CAC CTC TGA C | 40 µM | 10 nmol |
| InfA Reverse | AGG GCA TTY TGG ACA AAK CGT CTA | 40 µM | 10 nmol |
| InfA Probe[1] | TGC AGT CCT CGC TCA CTG GGC ACG | 10 µM | 2.5 nmol |
| SW InfA Forward | GCA CGG TCA GCA CTT ATY CTR AG | 40 µM | 10 nmol |
| SW InfA Reverse | GTG RGC TGG GTT TTC ATT TGG TC | 40 µM | 10 nmol |
| SW InfA Probe[2] | CYA CTG CAA GCC CA*T* ACA CAC AAG CAG GCA | 10 µM | 2.5 nmol |
| SW H1 Forward | GTG CTA TAA ACA CCA GCC TYC CA | 40 µM | 10 nmol |
| SW H1 Reverse | CGG GAT ATT CCT TAA TCC TGT RGC | 40 µM | 10 nmol |
| SW H1 Probe[2] | CA GAA TAT ACA *T*CC RGT CAC AAT TGG ARA A | 10 µM | 2.5 nmol |
| RnaseP Forward | AGA TTT GGA CCT GCG AGC G | 40 µM | 10 nmol |
| RnaseP Reverse | GAG CGG CTG TCT CCA CAA GT | 40 µM | 10 nmol |
| RnaseP Probe[1] | TTC TGA CCT GAA GGC TCT GCG CG | 10 µM | 2.5 nmol |

1. TaqMan® probes are labeled at the 5'-end with the reporter molecule 6-carboxyfluorescein (FAM) and with the quencher Blackhole Quencher (BHQ1) (Biosearch Technologies, Inc., Novato, CA) at the 3' end.
2. TaqMan® probes are labeled at the 5'-end with the reporter molecule 6-carboxyfluorescein (FAM) and quenched internally at a modified "T" residue with BHQ1, with a modified 3'-end to prevent probe extension by Taq polymerase.

This product is not for sale or use in the United States.

TaqMan® is a registered trademark owned by Roche and licensed exclusively to Applied Biosystems in the research related fields.

Practice of the patented 5' Nuclease Process requires a license from Applied Biosystems. The purchase of the Influenza A (H1N1) Primer and Probe Set includes an immunity from suit under patents specified in the product insert to use only the amount purchased for the purchaser's own internal research when used with the separate purchase of an Authorized 5' Nuclease Core Kit. No other patent rights are conveyed expressly, by implication, or by estoppel. For further information on purchasing licenses contact the Director of Licensing, Applied Biosystems, 850 Lincoln Centre Drive, Foster City, California 94404, USA.

NOTICE TO PURCHASER: LIMITED LICENSE
A license to perform the patented 5' Nuclease Process for research is obtained by the purchase of (i) both Licensed Probe and Authorized 5' Nuclease Core Kit, (ii) a Licensed 5' Nuclease Kit, or (iii) license rights from Applied Biosystems.

The Influenza A (H1N1) Primer and Probes Set contains Licensed Probe. Use of this product is covered by one or more of the following US patents and corresponding patent claims outside the US: 5,538,848, 5,723,591, 5,876,930, 6,030,787, 6,258,569, and 5,804,375 (claims 1-12 only). The purchase of this product includes a limited, non-transferable immunity from suit under the foregoing patent claims for using only this amount of product for the purchaser's own internal research. The right to use this product in the 5' Nuclease Process under the applicable claims of US Patents Nos. 5,210,015 and 5,487,972, and corresponding patent claims outside the United States, can be obtained through the purchase of an Authorized 5' Nuclease Core Kit. Except under separate license rights available from Applied Biosystems, no right under any other patent claim, or to perform commercial services of any kind, including without limitation reporting the results of purchaser's activities for a fee or other commercial consideration, or to sublicense, repackage with other products, or resell in any form, is conveyed expressly, by implication, or by estoppel. This product is for research use only. Diagnostic uses under Roche patents require a separate license from Roche. Further information on purchasing licenses may be obtained from the Director of Licensing, Applied Biosystems, 850 Lincoln Centre Drive, Foster City, California 94404, USA.

 **invitrogen**

www.invitrogen.com

For research use only. Not intended for any animal or human therapeutic or diagnostic use, unless otherwise stated.
© 2009 Life Technologies Corporation. All rights reserved. The trademarks mentioned herein are the property of Life Technologies Corporation or their respective owners. TaqMan is a registered trademark of Roche Molecular Systems, Inc. These products may be covered by one or more Limited Use Label Licenses (see Invitrogen catalog or www.invitrogen.com). By use of these products you accept the terms and conditions of all applicable Limited Use Label Licenses. F-085513  0509