KENNETH E. KELLER (SBN 71450) kkeller@kksrr.com
MICHAEL D. LISI (SBN 196974) mlisi@kksrr.com
TANYA I. WEI (SBN 240867) twei@kksrr.com
KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
Telephone:     (415) 249-8330
Facsimile:      (415) 249-8333

KURTIS D. MACFERRIN (SBN 178006) kurtis.macferrin@lifetech.com
CORA LOUISE SCHMID (SBN 237267) cora.schmid@lifetech.com
LIFE TECHNOLOGIES CORPORATION
5791 Van Allen Way
Carlsbad, CA  92008
Telephone:     (760) 603-7200
Facsimile:      (760) 602-6500

Attorneys for Plaintiff
LIFE TECHNOLOGIES CORPORATION

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>BIOSEARCH TECHNOLOGIES, INC.,<br><br>Defendant. | Case No.:  3:10-cv-02665 JAH (MDD)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF LIFE TECHNOLOGIES CORPORATION'S MOTION TO DISMISS DEFENDANT BIOSEARCH TECHNOLOGIES, INC.'S FIRST AMENDED COUNTERCLAIMS**<br><br>**Hearing Date:  August 8, 2011**<br>**Time:  2:30 p.m.**<br>**Courtroom:  11**<br>**Judge:  Hon. John A. Houston** |

TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ...........................................................................................1

II.   PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS ...................................1

      A.    Biosearch's First Attempt to Plead Its Counterclaims...........................1

      B.    Biosearch's Second Attempt to Plead Its Counterclaims ......................2

      C.    Biosearch's Amended Allegations.........................................................3

III.  ARGUMENT ...............................................................................................4

      A.    Biosearch's Counterclaim for Breach of Contract Should Be
            Dismissed ............................................................................................4

            1.    Biosearch Lacks Standing To Bring Its Breach of Contract
                  Claim...........................................................................................5

                  a.    Legal Standard under Rule 12(b)(1) ............................5

                  b.    Biosearch Lacks Standing To Bring Its Breach Of
                        Contract Counterclaim Because It Is Not A Party To
                        The Contract At Issue or a Third Party Beneficiary ....6

            2.    Biosearch Also Fails To State a Claim for Breach of Contract ...............8

                  a.    Legal Standard under Rule 12(b)(6) ............................8

                  b.    Biosearch Fails to State a Claim Under Rule 12(b)(6) ...............9

      B.    Biosearch's State Law Tort Claims Should Also Be Dismissed ......................13

            1.    False Advertising under Bus. & Prof. Code Section 17500 ..................15

            2.    Unfair Competition Under Bus. & Prof. Code § 17200 ......................15

            3.    Intentional Interference with Prospective Economic
                  Advantage ............................................................................18

            4.    Common Law Unfair Competition .........................................21

      C.    Biosearch's State Law Counterclaims Should Be Dismissed With
            Prejudice Because Amendment Would Be Futile...............................22

IV.   CONCLUSION...........................................................................................24

i

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Alexander v. Codemasters Group Ltd.*,
   104 Cal.App.4th 129 (2002) ...................................................................13

*Am. Employers Group, Inc. v. Employment Dev. Dep't*,
   154 Cal.App.4th 836 (2007) ...................................................................12

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas. Co.*,\
   116 Cal.App.4th 1375 (2004) .................................................................10

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................9, 11, 20

*Bank of the West v. Superior Court*,
   2 Cal.4th 1254 (1992) .............................................................................22

*Banner Entm't, Inc. v. Superior Court*,
   62 Cal.App.4th 348 (1998) .....................................................................12

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................9

*Berryman v. Merit Property Management, Inc.*,
   152 Cal.App.4th 1544 (2007) ...........................................................13, 16

*CDF Firefighters v. Maldonado*,
   158 Cal.App.4th 1226 (2008) .................................................................10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal.4th 163 (1999) .............................................................................17

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
   11 Cal.4th 376 (1995) .............................................................................19

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2011) ..................................................................24

*Doe v. Holy See*,
   557 F.3d 1066 (9th Cir. 2009 ...................................................................6

*Hamilton v. State Farm Fire & Casualty Co.*,
   270 F.3d 778 (9th Cir. 2001) ..................................................................23

ii

*Hilderman v. Enea TekSci, Inc.*,
   551 F. Supp. 2d 1183 (S.D. Cal. 2008)......................................................................5

*Holden v. Hagopian*,
   978 F.2d 1115 (9th Cir. 1992) .....................................................................................8

*JRS Products, Inc. v. Matsushita Electric Corp. of America*,
   115 Cal.App. 4th 168 (2004) .....................................................................................19

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
   701 F.2d 1276 (9th Cir.1983) ....................................................................................22

*Knowles v. Pacific Gas & Elec. Co.*,
   2008 WL 2705097 (N.D. Cal. 2008............................................................................23

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .............................................................................................19

*Lazar v. Hertz Corp.*,
   69 Cal.App.4th 1494 (1999) ......................................................................................16

*Loiseau v. Visa USA, Inc.*, Case No. 09-CV-2177-H (JMA),
   2010 WL 4542896 (S.D. Cal. Feb. 10, 2010) .............................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir.2008) ....................................................................................22

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) .......................................................................................8

*McDonald v. John P. Scripps Newspaper*,
   210 Cal. App. 3d 100 (1989) .....................................................................................10

*Morning Star Packing Co. v. SK Foods, L.P.*,
   754 F.Supp.2d 1230 (E.D. Cal. 2010)........................................................................22

*Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003) .....................................................................17

*Pedroza v. Gonzalez*,
   2010 WL 6052381 (S.D. Cal. 2010)..............................................................................9

*Pestube Systems, Inc. v. HomeTeam Pest Defense, LLC*,
   2006 WL 1441014 (D.Ariz. 2006)................................................................................3

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir.1990) .......................................................................................22

iii

*Renne v. Geary*,
   501 U.S. 312 (1991)................................................................................5

*Rondberg v. McCoy*,
   2009 WL 3017611 (S.D. Cal. 2009) ......................................................9

*Safe Air For Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................6

*Saunders v. Superior Court*,
   27 Cal.App.4th 832 (1994) ....................................................................16

*Shroyer v. New Cingular Wireless Services, Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ..............................................................16

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
   983 F. Supp. 1303 (N.D.Cal. 1997) ......................................................17

*Southern Cal. Gas Co. v. ABC Construction Co.*
   (1962) 204 Cal.App.2d 747, 22 Cal.Rptr. 540 ......................................14

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ..............................................................22

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..................................................................9

*State of California ex rel. Bowen v. Bank of America Corp.*,
   126 Cal. App. 4th 225 (2005) ..................................................................5

*Sybersound, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ..............................................................17

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ................................................................6

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)................................................................................5

*Wolfe v. Strankman*,
   392 F.3d 358 (9th Cir. 2004) ..................................................................6

**Statutes**

Bus. & Prof. Code § 17200................................................................2, 15, 17

Cal. Bus. & Prof. Code § 17500 ..................................................................2

Cal. Civ. Code § 1565................................................................................13

_____

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF LIFE TECHNOLOGIES CORPORATION'S MOTION TO DISMISS
CASE NO. 3:10-cv-02665 JAH (MDD)

Cal. Civ. Code § 1580 ................................................................................................12

Fed. R. Civ. P. 12(b)(6) ......................................................................................8, 9, 22

**Other Authorities**

C. Wright and A. Miller, Federal Practice and Procedure;
    2D, § 1346 (2d ed. Supp. 2002) ...............................................................................3

U.S. Const. Art. III, § 2 ..............................................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF LIFE TECHNOLOGIES CORPORATION'S MOTION TO DISMISS
CASE NO. 3:10-cv-02665 JAH (MDD)

# I.      INTRODUCTION

Defendant Biosearch Technologies, Inc. ("Biosearch") has now had three separate opportunities to plead its state law counterclaims against plaintiff Life Technologies Corporation ("Life Tech").  As with both of its first two attempts, the centerpiece of Biosearch's state law counterclaims is its claim that Life Tech breached a purported contractual agreement between itself and Biosearch.  And as with both of its first two attempts, Biosearch has failed to adequately plead the most fundamental part of its claims – that it is a party to, or otherwise has standing to enforce, any contract with Life Tech governing Life Tech's allegedly improper use of the product at issue.  That repeated failure warrants dismissal of its breach of contract counterclaim with prejudice.

Moreover, Biosearch's other state law counterclaims should also be dismissed.  Each of those counterclaims is premised on Biosearch's inadequately pled breach of contract claim, and thus they should be dismissed as well.  Moreover, the remaining state law counterclaims are inadequately pled for other reasons as well.  Having now failed in three separate attempts to properly plead these counterclaims, all of Biosearch's state law counterclaims against Life Tech should be dismissed with prejudice.

# II.      PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

## A.      Biosearch's First Attempt to Plead Its Counterclaims

This is not the first time that Biosearch has sought to bring these claims against Life Tech, or that Life Tech has challenged the sufficiency of Biosearch's pleadings.  Biosearch first asserted these claims in California state court on April 23, 2010.  (*See* Request for Judicial Notice, filed herewith, Ex. A).  Life Tech demurred to that complaint on December 10, 2010, on the grounds that (a) Biosearch did not allege the existence of any contract that had been breached by Life Tech and thus failed to adequately plead its claim for breach of contract, and that (b) the other state law counterclaims failed because they each depended on Life Tech's purported breach of contract.  (*See* Request for Judicial Notice, Ex. B).  In particular, although it identified the actions it claimed constituted Life Tech's "breach," Biosearch failed to allege

the existence of a contract between itself and Life Tech that purportedly governed that conduct. (*See id.*).  Instead, Biosearch alleged the existence of a contract between Life Tech and another entity – Glen Research – without ever alleging that Biosearch was a party to the Life Tech-Glen Research agreement, or otherwise explaining how Biosearch was entitled to enforce such a contract.  (*See id.*).  However, on March 4, 2011, months after the demurrer was filed and only 10 days before its opposition was due, Biosearch dismissed its state court action, made some changes to those state court claims, and asserted them as counterclaims in this action.  (*See* Dkt. No. 13).

### B.   Biosearch's Second Attempt to Plead Its Counterclaims

Biosearch's counterclaims in this action were originally filed on March 4, 2011, when Biosearch answered Life Tech's Complaint.  (Dkt. No. 13).  The counterclaims asserted patent infringement, as well as state law counterclaims for (1) breach of contract, (2) unfair competition under Cal. Bus. & Prof. Code § 17200, (3) unfair advertising under Cal. Bus. & Prof. Code § 17500, (4) intentional interference with prospective economic advantage; and (5) common law unfair competition.  (*See id.*).  On April 25, 2011, Life Tech moved to dismiss the state law counterclaims with prejudice, on essentially the same grounds asserted in its demurrer to the state court claims.  (*See* Dkt. No. 18).

Apparently recognizing the deficiencies in its pleadings, Biosearch chose not to oppose Life Tech's motion to dismiss, and instead filed its First Amended Answer to Complaint and Counterclaims ("Amended Counterclaim") on May 16, 2011, three weeks before its opposition to the motion would have been due.  (*See* Dkt. No. 22).  In particular, Biosearch amended its breach of contract counterclaim in an effort to insert itself into the relationship between Life Tech and Glen Research.  As with its earlier pleading, Biosearch once again has asserted counterclaims for patent infringement, as well as state law counterclaims for (1) breach of contract, (2) unfair advertising under Cal. Bus. & Prof. Code § 17500, (3) unfair competition under Cal. Bus. & Prof. Code § 17200, (4) intentional interference with prospective economic advantage; and (5) common law unfair competition.  (*Id.*).  And once again, these state law

1   counterclaims are inadequately pled, and should be dismissed with prejudice.[1]

2   **C.   Biosearch's Amended Allegations**

3   The Amended Counterclaim first addresses Biosearch's relationship with Defendant

4   Life Tech's predecessor, Invitrogen Corporation, approximately ten years ago.  According to

5   the Amended Counterclaim, in or around 2000, Biosearch developed a quencher dye known as

6   Black Hole Quencher ("BHQ®").  (*Id.*).  Biosearch alleges that it sold "BHQ® probes, active

7   esters, and amidites" to Invitrogen starting "at least as early as 2001."  (Amended Counterclaim,

8   Dkt. No. 22, ¶ 10).  Biosearch contends that it "included a written comprehensive limited use

9   Agreement (the 'EULA') with all purchases of its BHQ®s."  (*Id.* and Ex. A).  Specifically,

10  Biosearch claims that this EULA "was included in all contracts, included in the Biosearch

11  Licensee Handbook, published on Biosearch's website, and included in any shipments made to

12  customers or by licensed distributors."  (*Id.*).[2]  As with its previous pleadings, Biosearch does

13  not allege that it entered into any other agreements with Invitrogen or Life Tech at that time.

14  The Amended Counterclaim then jumps ahead to 2009 when, according to Biosearch,

15  the United States Center for Disease Control selected BHQ® for use worldwide in testing for

16  the H1N1 virus.  (*Id.* ¶ 13).  Biosearch also alleges that in 2009, Life Tech "arranged with a

17  Biosearch third-party supplier/distributor, Glen Research Corporation ('Glen Research'), to

18  purchase BHQ®s from the third-party distributor of BHQ®s."  (*Id.* ¶ 14).  It further contends

19  that the "third-party distributor's [Glen Research's] distribution rights specifically limited the

20  use of BHQ®s to research and development only and excluded commercial, clinical, and *in*

---

[1] The filing of this Motion to Dismiss the state law counterclaims tolls the deadline for Life Tech to respond to the patent infringement counterclaims (Sixth, Seventh and Eighth Counterclaims).  *See, e.g., Pestube Systems, Inc. v. HomeTeam Pest Defense, LLC*, No. CIV-05-2832-PHX-MHM, 2006 WL 1441014, at *7 (D. Ariz. May 24, 2006) ("[T]he majority of courts have expressly held that even though a pending motion to dismiss may only address some of the claims alleged, the motion to dismiss tolls the time to respond to all claims."); *see also* 5A C. Wright and A. Miller, Federal Practice and Procedure; Civil 2D, § 1346, 146 (2d ed. Supp. 2002) ("the weight of the limited authority on this point is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.").  Life Tech will respond to those counterclaims once the issues regarding the state law counterclaims have been resolved.

[2] Although it alleges that the EULA was "included in the Biosearch Licensee Handbook," there is no allegation that the "Licensee Handbook" was ever provided to Invitrogen or Life Tech.

3

1   *vitro* diagnostic uses."  (*Id.*).  Significantly, Biosearch does not allege that it was directly

2   involved with any of these post-2009 sales to Life Tech.

3        Nor does Biosearch appear to know the terms of any contract between Life Tech and

4   Glen Research regarding these alleged sales of BHQ®s.  Instead, pleading entirely on

5   "information and belief," Biosearch alleges that the BHQ®s were "subject to a limited-use

6   license," and that as a result Life Tech was able "to purchase these BHQ®s at a price far below

7   what BHQ®s licensed for commercial uses, such as for H1N1 testing, command and are sold

8   for."  (Amended Counterclaim, Dkt. No. 22, ¶ 15).  It further alleges – again, on information

9   and belief – that Glen Research advised its customers in writing and on its website of the

10   restricted use for BHQ®s and included the EULA in all shipments."  (*Id.* ¶ 16).  However,

11   Biosearch does not identify any BHQ® sales, other than the alleged 2001 sales, that Biosearch

12   itself made to Life Tech or Invitrogen subject to the EULA.  Biosearch also alleges on

13   information and belief that Life Tech "was aware of the EULA's terms, understood the

14   limitations imposed by the EULA, and agreed to be bound by the terms of the EULA,"

15   (Amended Counterclaim, Dkt No. 22, ¶ 17), but fails to clarify either the meaning of this vague

16   allegation or the basis for it.

17        The Amended Counterclaim alleges that Life Tech "breached one or more terms of the

18   EULA by selling H1N1 Kits containing probes labeled with Biosearch's BHQ® purchased from

19   Glen Research for commercial, clinical, and/or in vitro diagnostic purposes."  (*Id.* ¶¶ 25).

20   Biosearch does not allege that any of the BHQ®s that Invitrogen purchased from Biosearch in

21   2001 were included in the post-2009 H1N1 products whose sales constitute the alleged breach.

22   This alleged breach of contract also forms the basis of each of Biosearch's other state law

23   claims.  (*See, e.g., id.* ¶¶ 33, 40-43, 53-57; 61).

### III.   ARGUMENT

#### A.   Biosearch's Counterclaim for Breach of Contract Should Be Dismissed

26        Although Biosearch's Amended Counterclaim attempts to remedy the obvious

27   deficiencies in its original breach of contract counterclaim, its effort falls well short of the mark.

28

Rather than resolve those deficiencies, the amended allegations fail to allege that Biosearch has

standing to bring its breach of contract action because Biosearch has not pled sufficient facts to

show that it is a party to the contract that was allegedly breached, nor has it pled that it is a third

party beneficiary.  At the same time, Biosearch has not alleged the requisite elements for a

breach of contract claim under California law, and thus its failure to state a claim warrants

dismissal as well.

### 1.   Biosearch Lacks Standing To Bring Its Breach of Contract Claim

#### a.   Legal Standard under Rule 12(b)(1)

To maintain its counterclaims, Biosearch must demonstrate that it satisfies the standing

requirements imposed by Article III of the United States Constitution.  *See Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 551-562 (1992) (party invoking federal jurisdiction bears burden of

establishing standing); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (plaintiff must "clearly

and specifically" set forth facts sufficient to satisfy Article III standing requirements).  Article

III standing requirements arise out of the constitutional mandate that federal courts decide

actual "cases" and "controversies," as well as prudential concerns addressing the wisdom of

submitting certain disputes to the court.  U.S. Const. Art. III, § 2; *Renne v. Geary*, 501 U.S. 312,

316 (1991).

Where an entity is neither a party nor a third party beneficiary to a contract, that entity

does not have standing to sue for breach of that contract.  *Hilderman v. Enea TekSci, Inc.*, 551

F. Supp. 2d 1183, 1195 (S.D. Cal. 2008) ("Enea also challenges HighRely's standing to bring

the breach of contract claim.  The Court agrees that HighRely, who was not a party to the

contract, lacks standing to assert this claim."); *Safjr v. BBG Comm., Inc.*, Case No. 10-CV-2341

H (NLS), 2011 WL 902296, at *2 (S.D. Cal. Mar. 15, 2011) ("Keeports has no standing for the

breach of contract cause of action because his wife – not him – is the party to any contract that

may have existed and Keeports does not allege that he was a third party beneficiary."); *see also*

*State of California ex rel. Bowen v. Bank of America Corp.*, 126 Cal. App. 4th 225, 238 (2005)

("In sustaining defendants' demurrer to the amended master complaint, the trial court concluded

5

_____

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF LIFE TECHNOLOGIES CORPORATION'S MOTION TO DISMISS
CASE NO. 3:10-cv-02665 JAH (MDD)

1    that plaintiff, who is neither a party nor third party beneficiary to the promissory notes and

2    deeds of trust, lacked standing to sue for breach of contract.  Plaintiff does not dispute that

3    ruling on appeal.").

4         A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the

5    Federal Rules of Civil Procedure may be facial or factual.  *Safe Air For Everyone v. Meyer*, 373

6    F.3d 1035, 1038 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations

7    contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  In

8    such a facial attack under Rule 12(b)(1) the Court should "assume [claimant's] [factual]

9    allegations to be true and draw all reasonable inferences in his favor."  *Doe v. Holy See*, 557

10   F.3d 1066, 1073 (9th Cir. 2009) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

11   The Ninth Circuit has cautioned that, on such a challenge, Courts "do not, however, accept the

12   'truth of legal conclusions merely because they are cast in the form of factual allegations.'"

13   *Doe* , 557 F.3d at 1073 (citing *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th

14   Cir. 2003)).

15
                **b.**   **Biosearch Lacks Standing To Bring Its Breach Of Contract**
                         **Counterclaim Because It Is Not A Party To The Contract At**
16                       **Issue or a Third Party Beneficiary**

17        Simply stated, Biosearch fails to meet its burden to establish facial standing for its

18   breach of contract counterclaim because the amended counterclaim does not allege facts

19   establishing that Biosearch is a party to the allegedly breached contract, and Biosearch makes

20   no allegations that it is a third party beneficiary to a contract.  Even if Biosearch has arguably

21   alleged the existence of a contract between Life Tech and *Glen Research*, Biosearch has failed

22   to allege that it was a party to that contract, or that it has any right to enforce it.

23        Specifically, the only breach identified by Biosearch is its allegation that "Life Tech

24   breached one or more terms of the EULA by selling H1N1 Kits containing probes labeled with

25   Biosearch's BHQ®s *purchased from Glen Research*."  (Amended Counterclaim, Dkt. No. 22, ¶

26   25 (emphasis added)).  On its face, that allegation would at most support a claim that Life Tech

27

28

_____
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF LIFE TECHNOLOGIES CORPORATION'S MOTION TO DISMISS
CASE NO. 3:10-cv-02665 JAH (MDD)

breached the terms of a purchase contract between Life Tech and Glen Research.[3]  Yet Biosearch has not alleged any facts that it was a party to this transaction, nor has it alleged that it was a third party beneficiary.

Biosearch attempts to gloss over its lack of standing by alleging that "Life Tech became a party to the EULA with Biosearch and met the privity requirement for contracts."  (Amended Counterclaim, Dkt. No. 22, ¶ 24).  But this statement is merely a legal conclusion.  This Court should "not . . . accept the 'truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Doe*, 557 F.3d at 1073.  Moreover, Biosearch's own allegations belie its unsupported conclusion that it was a party to the contract at issue.  In fact, Biosearch specifically posits that Biosearch became a party to this contract "when, with notice of the EULA and its restrictions, [Life Tech] purchased the BHQ®s *from Glen Research* and used the BHQ®s."  (Amended Counterclaim, Dkt. No. 22, ¶ 24) (emphasis added).  In other words, in the very same paragraph that Biosearch concludes it was a "party" to the alleged contract with Life Tech that governed the sales at issue, it also admits that it was not directly involved with those sales.  This Court has previously recognized that one who is not directly involved with the contract transaction is not a party to the contract, and thus does not have standing to sue for its breach.  *See Safjr*, 2011 WL 902296, at *2 (holding a claimant had no standing to sue for breach of contract regarding the price of a phone call where his wife, rather than him, made the phone call at issue); *Hilderman*, 551 F. Supp. 2d at 1195 ("The Court agrees that HighRely, who was not a party to the contract, lacks standing to assert this claim.").

While Biosearch alleges many other irrelevant facts, none of them can confer standing to sue on a contract to which Biosearch was not a party.  For example, Biosearch pleads that in "at least" 2001, it sold BHQ® probes directly to Life Tech's predecessor, Invitrogen, and that

---

[3] The allegations in the Amended Counterclaim also suggest the existence of a contractual relationship between Biosearch and Glen Research.  Specifically, Biosearch appears to allege that it had a contractual relationship with Glen Research, and that its contractual relationship with Glen Research imposed restrictions on Glen Research's rights to distribute BHQ®.  (*See* Amended Counterclaim, Dkt. No. 22, ¶ 14).  While such allegations might support a breach of contract claim by Biosearch against Glen Research, it does not support Biosearch's counterclaim against Life Tech, and certainly not a claim for breach of the EULA.

1  "at all times relevant herein Biosearch included a written comprehensive limited use Agreement

2  (the 'EULA') with all purchases of its BHQ®s."  (Amended Counterclaim, Dkt. No. 22, ¶ 10).

3  However, the existence of a contract purportedly governing the use of BHQ®s purchased in

4  2001 is irrelevant to an alleged breach that is based on the use of BHQ®s purchased separately

5  in 2009.  Biosearch does not allege that any of the BHQ®s purchased by Invitrogen in 2001

6  were used inconsistently with the terms of the EULA by either Invitrogen or by Life Tech.  To

7  the contrary, the Amended Counterclaim makes clear that the "breach" at issue is Life Tech's

8  sale of its Influenza A (H1N1) Primer and Probe Set "containing probes labeled with

9  Biosearch's BHQ®s purchased from Glen Research" in 2009.  (Amended Counterclaim, Dkt.

10  No. 22, ¶ 25).

11      Biosearch has not met its burden to establish standing for its breach of contract

12  counterclaim.  It has failed to plead sufficient facts to demonstrate that it was a party to the

13  contract, and has not even alleged that it was a third party beneficiary.  Indeed, the fact that

14  Biosearch can only plead the terms of its supposed contract with Life Tech "on information and

15  belief" speaks volumes as to the inadequacy of its pleading.  The constitutional standing

16  requirements demand more, and Biosearch's breach of contract counterclaim should be

17  dismissed.

18      **2.      Biosearch Also Fails To State a Claim for Breach of Contract**

19          **a.      Legal Standard under Rule 12(b)(6)**

20      The pleading deficiencies in the Amended Counterclaim also warrant dismissal of the

21  breach of contract counterclaim for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  When

22  evaluating a motion to dismiss under Rule 12(b)(6), a court must limit its review to the contents

23  of the complaint and must "presume all factual allegations of the complaint are true and draw

24  all reasonable inferences in favor of the nonmoving party."  *Holden v. Hagopian*, 978 F.2d

25  1115, 1118 (9th Cir. 1992); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  "However, a

26  court need not accept as true unreasonable inferences or conclusory legal allegations cast in the

27  form of factual allegations."  *Pedroza v. Gonzalez*, Civil No. 09-CV-1766-LAB (WVG), 2010

28

_____
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF LIFE TECHNOLOGIES CORPORATION'S MOTION TO DISMISS
CASE NO. 3:10-cv-02665 JAH (MDD)

1   WL 6052381, *3 (S.D. Cal. Dec. 13, 2010) (citing *Sprewell v. Golden State Warriors*, 266 F.3d

2   979, 988 (9th Cir. 2001)).  If a party fails to allege a required element of a claim, the claim

3   should be dismissed.  *See, e.g., Rondberg v. McCoy*, No. 09-CV-1672-H (CAB), 2009 WL

4   3017611, *3 (S.D. Cal. Sept. 21, 2009) (dismissing breach of contract claim for failure to

5   sufficiently allege existence of a contract).

6          Moreover, to withstand scrutiny under Rule 12(b)(6), a counterclaimant must allege

7   "enough facts to state a claim to relief that is plausible on its face," and must allege facts

8   sufficient to "raise a right to relief above the speculative level."  *Bell Atlantic v. Twombly*, 550

9   U.S. 544, 570 (2007).  Such allegations must give "fair notice of what the . . . claim is and the

10  grounds upon which it rests," and so a counterclaimant must allege more than "labels and

11  conclusions, and a formulaic recitation of the elements of a cause of action will not do."

12  *Twombly*, 550 U.S. at 555.  The Supreme Court has advised courts to consider motions to

13  dismiss under a "two-pronged approach."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

14  Court should "begin by identifying [allegations] that, because they are mere conclusions, are not

15  entitled to the assumption of truth."  *Id.* at 1940.  Second, they should examine whether the

16  remaining "well-pleaded nonconclusory factual allegations[s] . . . g[ive] rise to a plausible"

17  cause of action, dismissing the action if they do not.  *Id.* at 1950.  This requirement of adequate

18  pleading plays a crucial rule.  "[A] district court must retain the power to insist upon some

19  specificity in pleading" in a case, "lest a plaintiff with a largely groundless claim be allowed to

20  take up the time of a number of other people, with the right to do so representing an *in terrorem*

21  increment of the settlement value."  *Twombly*, 550 U.S. at 558 (internal citations omitted).  As

22  explained below, Biosearch has not satisfied this standard with respect to its breach of contract

23  counterclaim, and thus this counterclaim should be dismissed.

24                     **b.      Biosearch Fails to State a Claim Under Rule 12(b)(6)**

25          "In a breach of contract claim under California law, a plaintiff must allege (1) a contract,

26  (2) plaintiff's performance, (3) defendant's breach, and (4) damages."  *Loiseau v. Visa USA,*

27  *Inc.*, Case No. 09-CV-2177-H (JMA), 2010 WL 4542896, at * 2 (S.D. Cal. Feb. 10, 2010)

28

_____

1   (citing *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989)); *see also*

2   *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008) ("A cause of action for

3   breach of contract requires proof of the following elements: (1) existence of the contract; (2)

4   plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages

5   to plaintiff as a result of the breach.") (citing *Armstrong Petroleum Corp. v. Tri-Valley Oil &*

6   *Gas. Co.*, 116 Cal.App.4th 1375, 1391, fn. 6 (2004)).[4]  In this instance, Biosearch has not

7   satisfied its pleading burden because it has not alleged the existence of a contract between itself

8   and Life Tech that it has performed and Life Tech has breached.

9          The Amended Counterclaim's only allegation of "breach" was Life Tech's sale of its

10   Influenza A (H1N1) Primer and Probe Set "containing probes labeled with Biosearch's BHQ®s

11   purchased from Glen Research." (Amended Counterclaim, Dkt. No. 22, ¶ 25).  However,

12   Biosearch does not allege facts that support the existence of a contract between Biosearch and

13   Life Tech that governed those purchases from Glen Research.  Nor does Biosearch allege that it

14   has performed under such a contract – which is not surprising as it has not alleged it is a party to

15   that contract.  For that simple reason, it has not adequately pled its claim for breach of contract.

16          Rather than plead facts that would identify a contract between itself and Life Tech

17   which governed the relevant BHQ®s purchased from Glen Research, Biosearch tries to skirt the

18   edges of this pleading requirement by suggesting, without any supporting allegations, that "Life

19   Tech became a party to the EULA with Biosearch and met the privity requirement for contracts

20   when, with notice of the EULA and its restrictions, it purchased the BHQ®s from Glen

21   Research and used the BHQ®s."  (Amended Counterclaim, Dkt. No. 22, ¶ 24).  That allegation

22   is inadequate for two reasons.  First, that allegation does not provide the requisite "factual

23   content that allows the court to draw the reasonable inference that the defendant is liable for the

24   _____

25   [4]  Biosearch's failure to identify the contract that Life Tech purportedly breached renders it
     difficult, if not impossible, for Life Tech to determine which forum's substantive law would
26   apply to Biosearch's breach of contract claim.  For purposes of this motion, Life Tech has
     applied the law of the forum state, California, but, in the event Biosearch is permitted to pursue
27   its claim, Life Tech expressly reserves the right to argue that another state's substantive law
     should be applied.  *See Casey v. Olson*, No. 09cv1111 JAH (POR), 2010 WL 3516930 at *3
28   (S.D. Cal. Sep. 8, 2010).

1   misconduct alleged," *Iqbal*, 129 S. Ct. at 1949, but instead offers only the bare legal conclusion

2   that Life Tech was in a contractual relationship with Biosearch.[5]  As such, it is nothing more

3   than the formulaic recitation of claim elements criticized in *Twombly*, and as a "mere

4   conclusion[]" of law it is "not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1940.

5           Second, rather than establish the existence of a contract between Biosearch and Life

6   Tech, as it purports to do, that allegation candidly admits that Biosearch was not directly

7   involved in the sale of the BHQ®s at issue.  Indeed, a review of the Amended Counterclaim

8   demonstrates that Biosearch has not alleged that it ever entered into a direct contractual

9   relationship with Life Tech or reached a "meeting of the minds" over the terms that would

10  govern such a relationship.  At no time does Biosearch allege that it and Life Tech ever

11  negotiated or reached agreement on any such contract, or even that it sold the BHQ®s at issue

12  directly to Life Tech.  This is in direct contrast to the allegations that it sold BHQ®s that were

13  not involved with the alleged breach directly to Life Tech's predecessor in 2001, and that such

14  sales were subject to the EULA.  Plainly, had Biosearch been able to allege such a direct

15  relationship between itself and Life Tech for the BHQ®s at issue, it would have done so in one

16  of its three attempts to plead this claim.  The absence of such factual allegations underscores

17  Biosearch's failure to adequately plead the elements of its breach of contract counterclaim.

18          In reality, the allegations of the Amended Counterclaim make clear that the only

19  contractual relationship alleged that governs the relevant sales of BHQ®s was a purported

20  contract between Life Tech and Glen Research.  The Amended Counterclaim expressly

21  contends that Life Tech entered into an agreement with Glen Research to purchase BHQ®s, and

22  that Glen Research "advised its customers in writing and on its website of the restricted use for

23  BHQ®s and included the EULA in all shipments."  (Amended Counterclaim, Dkt. No. 22, ¶¶

24  14, 16).  Biosearch also alleges, in connection with its allegations regarding Glen Research, that

25  _____

26  [5] It is also quite telling that Biosearch has been forced to allege the terms of the purportedly
    breached contract "on information and belief."  (*See, e.g.*, Amended Counterclaim, Dkt. No. 22,
27  ¶¶ 15-17).  If, as it claims, Biosearch were a party to a contract with Life Tech, it would stand to
    reason that Biosearch would be able to allege the precise terms of that contract, and identify
28  when and how the parties agreed upon those terms.

1    Life Tech "agreed to be bound" by the EULA.  (*Id*. ¶ 17).  Obviously, while those allegations

2    may demonstrate a contractual relationship between Life Tech and Glen Research, they say

3    nothing about a contractual relationship between Life Tech and Biosearch.

4         Nor do any of the remaining allegations in the Amended Counterclaim plausibly plead

5    the existence of a contract between Biosearch and Life Tech which Biosearch performed and

6    Life Tech breached.  For example, Biosearch alleges that it became a party to a contract with

7    Life Tech because Life Tech had "notice of the EULA" when Life Tech purchased BHQ®s

8    from Glen Research in 2009.  (*Id*. ¶ 24).  But mere "notice" of the EULA is not sufficient to

9    establish a contract between Life Tech and Biosearch based on Life Tech's purchases from

10   Glen Research.  It is axiomatic that, in order to establish the existence of a contract, there must

11   be a meeting of the minds between the parties as to its material terms.  *See Am. Employers*

12   *Group, Inc. v. Employment Dev. Dep't,* 154 Cal.App.4th 836, 846 (2007) ("[T]here is no

13   contract until there has been a meeting of the minds on all material points.") (quoting *Banner*

14   *Entm't, Inc. v. Superior Court*, 62 Cal.App.4th 348, 358 (1998)).  "Mutual intent is

15   determinative of contract formation because there is no contract unless the parties thereto

16   assent, and they must assent to the same thing, in the same sense."  *Banner*, 62 Cal.App.4th at

17   358-59; *see also* Cal. Civ. Code § 1580.  The simple allegation that Life Tech was "aware" or

18   "knew" of the EULA does not establish that Life Tech assented to its terms or agreed that it

19   would govern the purchase of BHQ®s from Glen Research in 2009, let alone establish a

20   relationship between Life Tech and Biosearch concerning those purchases.

21        Similarly, the allegation that "Life Tech had the opportunity to reject the EULA by not

22   purchasing BHQ®s from Glen Research," and apparently failed to do so is perhaps the most

23   telling example of Biosearch trying to avoid its pleading obligations.  (*Id*. ¶ 22).  Biosearch's

24   allegation that by making an alleged purchase from Glen Research Life Tech "failed" to

25   "reject" the EULA is not an accurate statement of the law.  California contract law requires a

26   more affirmative act before a contract is formed.  *See, e.g., Am. Employers Group*, 154

27   Cal.App.4th at 847 (objective review of "outward manifestations or expressions of the parties,

28

*i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings" is proper method to determine whether there was mutual assent to material terms)  (quoting *Alexander v. Codemasters Group Ltd.*, 104 Cal.App.4th 129, 141 (2002)); *see also* Cal. Civ. Code § 1565 (consent must be mutual and communicated by each party to the other).  Moreover, nothing in that allegation suggests a contractual relationship between Life Tech and Biosearch – once again, if Life Tech entered into an agreement by purchasing BHQ®s from Glen Research, then any contractual relationship would have been with Glen Research, not Biosearch.  Biosearch's novel and convoluted theory that Life Tech was obliged to avoid purchasing BHQ®s from Glen Research in order to "reject" a purported "contract" with Biosearch cannot save its breach of contract counterclaim.

Putting aside all of these unsupported, contradictory, and conclusory allegations, Biosearch has failed to adequately allege that it entered into a contract with Life Tech that governed Life Tech's 2009 purchases of BHQ®s from Glen Research.  Biosearch has also failed to allege that it performed under the contract by which Life Tech purchased BHQ®s from Glen Research – another required element of a breach of contract claim.  Given that Life Tech's use of the BHQ®s purchased from Glen Research is the only "breach" alleged, Biosearch has not pled facts that plausibly support the existence of any contract between itself and Life Tech which governed the relevant purchase of BHQ®s, which Biosearch performed, and which Life Tech breached.  Biosearch's breach of contract counterclaim should be dismissed.

**B.    Biosearch's State Law Tort Claims Should Also Be Dismissed**

Biosearch's failure to adequately plead its claim for breach of contract also sounds a death knell for its remaining state law counterclaims because each is based on Life Tech's alleged breach of the EULA.  Although Biosearch's recent amendments seek to camouflage this fact, a review of the Amended Counterclaim makes clear that absent a viable claim for breach of contract, the remaining state law counterclaims should also be dismissed.

The decision in *Berryman v. Merit Property Management, Inc.*, 152 Cal.App.4th 1544 (2007), is instructive on this issue.  In that instance, various homeowners brought a class action

1   against defendant Merit Property Management, alleging that Merit wrongfully charged the

2   homeowners certain document and transfer fees upon the purchase or sale of their residence.

3   Plaintiffs alleged that the fees were not permitted either by statute or by the terms of the

4   contracts between Merit and the homeowners associations for the communities where plaintiffs

5   lived.  Plaintiffs alleged causes of action for, *inter alia*, violation of Civil Code section 1368

6   (which governs such fees) and violation of Section 17200.  The trial court sustained defendants'

7   demurrer to the second amended complaint without leave to amend, and plaintiffs appealed.

8          The Court of Appeal affirmed.  In doing so, the court examined plaintiffs' reliance on its

9   breach of contract theory as a basis for its other claims, including its Section 17200 claim, and

10   concluded:

11              The problem with these allegations is that plaintiffs are not parties to
                the contract with Merit—the associations are.  Even assuming the
12              allegations are true, plaintiffs are at best incidental beneficiaries and
                have no standing to recover under the contract. (*Southern Cal. Gas Co.*
13              *v. ABC Construction Co.* (1962) 204 Cal.App.2d 747, 750, 22 Cal.Rptr.
                540.)  By the same logic, plaintiffs cannot use the contracts to bootstrap
14              liability under other theories, such as the UCL, CLRA or common law
                theories such as negligence.  Permitting such recovery would
15              completely destroy the principle that a third party cannot sue on a
                contract to which he or she is merely an incidental beneficiary. . . . To
16              the extent a cause of action relies on either violation of section 1368 or
                breach of the contracts between Merit and the associations, the claim
17              cannot be maintained.

18   *Id.; see also Safjr*, 2011 WL 902296, at *2 ("[T]he Court concludes Plaintiff

19   Keeports lacks standing on the causes of action for declaratory relief and common

20   counts because they are all predicated on the breach of contract and non-disclosures

21   and misrepresentations – which Keeports has no standing to sue for.").

22          As discussed below, the same analysis applies to, and warrants dismissal of,

23   all of Biosearch's remaining state law counterclaims.  A review of the Amended

24   Counterclaim reveals that the gravamen of each of these is the same:  Life Tech's

25   alleged breach of a purported contract with Biosearch that incorporates the EULA

26   and governs the purchases of BHQ from Glen Research.  However, in light of

27   Biosearch's failure to adequately plead a contract between itself and Life Tech

28

14

1  governing the purchases in question, and given that Biosearch lacks standing to

2  enforce any contract between Life Tech and Glen Research governing those

3  purchases, its attempt to "bootstrap liability under other theories, such as the UCL,"

4  should be rejected.

5  **1.      False Advertising under Bus. & Prof. Code Section 17500**

6  Biosearch's Second Counterclaim for false advertising under Business & Professions

7  Code Section 17500 is based on the theory that Life Tech falsely advertised that it could "sell

8  commercially Biosearch's BHQ®s or products incorporating the BHQ®s," despite the fact that

9  "the EULA prohibits 'commercial use,' which is defined as without limitation 'sale[s],' of

10  Biosearch's BHQ®s, or products incorporating these BHQ®s."  (Amended Counterclaim, Dkt.

11  No. 22, ¶¶ 30, 33).

12  On its face, Biosearch is alleging that Life Tech's advertising of its products

13  incorporating Biosearch's BHQ®s was "false" because the sales of those products were "in

14  violation of the EULA."  As discussed in detail above, Biosearch has alleged that the EULA

15  was part of its contractual relationship with Life Tech.  (*See id.* ¶ 24).  Consequently, if the sale

16  of Life Tech's products was not in violation of some contractual obligation to Biosearch under

17  the EULA, then the advertising itself would not have been false.

18  That is precisely the situation here – Biosearch has not adequately pled that Life Tech

19  had any contractual obligation to Biosearch, or that Biosearch has standing to pursue any such

20  claims against Life Tech.  As such, the Second Counterclaim for false advertising under Section

21  17500 should be dismissed.  *See Berryman*, 152 Cal.App.4th at 1553 ("To the extent a cause of

22  action relies on . . . breach of the contracts between Merit and the associations, the claim cannot

23  be maintained.").

24  **2.      Unfair Competition Under Bus. & Prof. Code § 17200**

25  Biosearch's Third Counterclaim alleges that Life Tech has violated Business &

26  Professions Code section 17200.  Specifically, Biosearch contends that Life Tech committed

27  unfair and unlawful business acts and practices by deciding "to *breach its license obligations to*

28

15

1    *Biosearch*, and exploit the commercial opportunity presented by the H1N1 pandemic," and by

2    purchasing BHQ®s from Glen Research and "wrongfully using the BHQ®s in *contravention of*

3    *the license terms* and falsely advertising that it had the right to sell BHQ®s."  (Amended

4    Counterclaim, Dkt. No. 22, ¶¶ 40-43) (emphasis added).

5           As with the Section 17500 claim, on its face this counterclaim is dependent upon the

6    existence of a contract between Life Tech and Biosearch.  However, as demonstrated above,

7    Biosearch has not adequately pled the existence of any such contract between Biosearch and

8    Life Tech governing Life Tech's purchase of BHQ®s from Glen Research, nor has it

9    adequately alleged that it has standing to enforce any such contract governing those purchases.

10   Yet without a contractual obligation to Biosearch under the EULA, Life Tech's conduct was not

11   wrongful and its advertising was not "false."  As with the plaintiffs in *Berryman*, Biosearch's

12   reliance on its inadequately pled breach of contract counterclaim as the foundation of its

13   counterclaim for statutory unfair competition, requires dismissal of the Section 17200

14   counterclaim.  *Berryman*, 152 Cal.App.4th at 1553 (holding plaintiffs cannot use contracts to

15   which they are not parties "to bootstrap liability under other theories, such as the UCL").

16          Moreover, even if the Section 17200 claim were not based on the inadequately pled

17   breach of contract counterclaim, Biosearch has not adequately pled this counterclaim.

18   Biosearch has chosen to proceed under the "unlawful" and "unfair" prongs of the statute.  (*See*

19   Amended Counterclaim, Dkt. No. 22, ¶¶ 44-47) (alleging Life Tech's "business acts and

20   practices" were "unfair and unlawful").  "Under its 'unlawful' prong, 'the UCL borrows

21   violations of other laws . . . and makes those unlawful practices actionable under the UCL.'"

22   *Berryman*, 152 Cal.App.4th at 1554 (quoting *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505

23   (1999)).  However, Biosearch has not identified any conduct of Life Tech that is "forbidden by

24   law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."

25   *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-39 (1994).  A "common law violation

26   such as breach of contract is insufficient" to state a claim under the "unlawful" prong of Section

27   17200.  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010)

28

1   ("Because Shroyer does not go beyond alleging a violation of common law, he fails to state a

2   claim under the unlawful prong of § 17200.").

3       Nor has Biosearch adequately pled a claim for "unfair" business practices.  "Unfair acts

4   among competitors means 'conduct that threatens an incipient violation of an antitrust law, or

5   violates the spirit or policy of those laws because its effects are comparable to or the same as a

6   violation of the law, or otherwise significantly threatens or harms competition.'" *Sybersound,*

7   *Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (quoting *Cel-Tech Commc'ns, Inc. v.*

8   *L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999)).  By itself, a breach of contract will not

9   serve as a predicate for a claim under section 17200 unless it "also constitutes conduct that is

10  unlawful, or unfair, or fraudulent."  *Id.* at 1152 (quoting *Nat'l Rural Telecomm. Co-op. v.*

11  *DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003)).  As in *Sybersound*, however,

12  Biosearch "has not pled that the breaches of contract are independently unlawful, unfair, or

13  fraudulent."  *Id.* at 1152.

14      Nor has Biosearch adequately pled a disruption or other harm to its relationship with its

15  customers.  At best, Biosearch offers only conclusory allegations to that effect, but fails to

16  provide the requisite factual allegations demonstrating that such conclusory claims are even

17  plausible.  (*See, e.g.*, Amended Counterclaim, ¶ 47 ("Life Tech's acts impair fair and honest

18  competition and otherwise significantly harm competition in the market for Biosearch's

19  products."); *see also id.* ¶¶46, 48).  Such unsupported and conclusory allegations do not satisfy

20  the pleading requirements of *Iqbal* and *Twombly*, and do not adequately state a claim under

21  Section 17200.  *See Sybersound*, 517 F.3d at 1151 (finding Sybersound failed to plead facts

22  showing or allowing inference of actual disruption to relationship with customers where it

23  merely stated in conclusory manner that it "has been harmed because its ongoing business and

24  economic relationships with Customers have been disrupted" and did not allege that loss of a

25  contract or that negotiations with any customer failed); *Silicon Knights, Inc. v. Crystal*

26  *Dynamics, Inc.*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997) (finding pleadings insufficient where

27  complaint alleged only that misrepresentations induced distributors not to deal with plaintiffs

28

17

1 without providing facts alleging an actual disruption to negotiations or potential contracts).

2 These deficiencies also warrant dismissal of Biosearch's Section 17200 counterclaim.

3         **3.**      **Intentional Interference with Prospective Economic Advantage**

4       Biosearch next alleges that Life Tech has interfered with Biosearch's prospective sales

5 and/or relationships with "potential suppliers for the Indian market," including a company

6 called Gene Logic.  Although Biosearch attempts to camouflage the contractual basis for this

7 claim, a review of the allegations demonstrates that the intentional interference claim also

8 depends on Biosearch's insufficient claim for breach of contract.

9       Specifically, Biosearch's counterclaim is premised on its allegation that Life Tech

10 "intentionally interfered with Biosearch's prospective economic advantage with at least Gene

11 Logic along with its Indian market contacts" by selling Life Tech's Influenza A (H1N1) Primer

12 and Probe Set at a "substantial discount" and by "falsely advertising that it had the right to sell

13 commercially Biosearch's BHQ®s."  (Amended Counterclaim, Dkt. No. 22, ¶¶ 53, 57).

14 Biosearch alleges that Life Tech was able to sell its H1N1 Primer and Probe Set containing

15 BHQ® probes at a "reduced price" because "Life Tech was able to purchase [the relevant]

16 BHQ®s at price [sic] far below what BHQ®s licensed for commercial uses, such as for H1N1

17 testing, command and are in fact sold for . . . [b]ecause these BHQ®s were subject to a limited-

18 use license."  (Amended Counterclaim, Dkt. No. 22, ¶¶ 53-54).  In other words, Biosearch

19 alleges that Life Tech was able to interfere with Biosearch's prospective economic advantage

20 by virtue of purchasing and selling probes in breach of the restrictions of the "limited-use

21 license."  (*Id.*).  Yet such a "limited-use license" could only arise from a contract, and the only

22 contract that Biosearch could have standing to enforce is a contract between itself and Life Tech

23 governing the BHQ®s at issue – which Biosearch has not sufficiently alleged ever existed.

24 Similarly, the new allegation that Life Tech interfered with Biosearch's potential and actual

25 customers by "false[ly] advertising" its right to sell BHQ®s is premised entirely on the

26 allegation that Life Tech did not have the right to sell BHQ®s, i.e., that Life Tech's sales of

27 BHQ®s were in breach of its contractual rights vis-à-vis Biosearch.  Consequently, because this

28

1   claim relies on the inadequately pled breach of contract claim, it too must fail.  *See Berryman*,

2   152 Cal.App.4th at 1553.

3          In addition, this counterclaim should be dismissed because Biosearch has not adequately

4   pled all of its elements.  A party claiming interference must plead and prove "the defendant's

5   interference was wrongful 'by some measure beyond the fact of the interference itself.'"  *Della*

6   *Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 393 (1995).  The requirement of an

7   independent wrongful act has particular application where, as here, the alleged wrongful act is a

8   breach of contract.  In *JRS Products, Inc. v. Matsushita Electric Corp. of America*, 115

9   Cal.App. 4th 168, 179 (2004), the court examined the question of "whether damages can be

10  recovered for interference with prospective economic advantage by one contracting party

11  against another based on conduct that would otherwise constitute a breach of the parties'

12  contract."  The *JRS* court ruled that it could not, because to do so would permit a plaintiff to

13  recover tort damages for a breach of contract.  *Id.* at 180-183 (holding that defendant's breach

14  of contract with plaintiff "cannot be transmuted into tort liability by claiming that the breach

15  detrimentally affected the [plaintiff's] business") (recognized and distinguished on other

16  grounds in *Hilderman*, 551 F. Supp. 2d at 1197 n.1).  Thus, even if Biosearch had adequately

17  pled the existence of an enforceable contract between itself and Life Tech, the only "wrongful

18  act" alleged here is Life Tech's purported breach of such a contract, and the claim for

19  intentional interference with prospective economic advantage cannot stand.

20         The intentional interference claim should be dismissed for yet another reason.  To state a

21  claim for intentional interference with prospective economic advantage, a plaintiff must plead:

22  (1) an economic relationship between the plaintiff and some third party, with the probability of

23  future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3)

24  intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual

25  disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the

26  acts of the defendant.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153

27  (2003).  Biosearch does not plead with sufficient specificity either Life Tech's knowledge of the

28

1  purported relationship with Gene Logic or that Life Tech's acts were designed to interrupt that

2  relationship.  For example, Biosearch has not satisfied the second element of this claim because

3  its allegations concerning Life Tech's knowledge of any Biosearch relationships are vague

4  contentions that "Life Tech knew of Biosearch's ongoing business relationships with

5  governments and other entities around the world with respect to Biosearch's own H1N1 kits,"

6  and that "Life Tech further knew of Biosearch's marketing activities concerning the Biosearch

7  H1N1 Kits."  Even when it identifies a particular prospective client – Gene Logic – Biosearch

8  fails to identify any facts supporting its conclusory allegation, made on information and belief,

9  that "Life Tech knew of Biosearch's relationships with potential suppliers to the Indian market,

10  including Biosearch's relationship with Gene Logic."  (Amended Counterclaim, Dkt. No. 22, ¶

11  52).  There are no allegations as to when, where, or how Life Tech is alleged to have learned of

12  such a relationship.  Biosearch's level of pleading Life Tech's purported knowledge here is akin

13  to the allegations specifically found to be inadequate by the Supreme Court in *Iqbal*.  *Iqbal*, 129

14  S. Ct. at 1951 ("It is the conclusory nature of respondent's allegations, rather than their

15  extravagantly fanciful nature, that disentitles them to the presumption of truth.").

16          Similarly, the third element of this claim requires that Biosearch plead Life Tech's

17  intentional acts designed to disrupt the relationship at issue.  Here, Biosearch has only vaguely

18  alleged that "Life Tech intentionally interfered with Biosearch's prospective economic

19  advantage with at least Gene Logic along with its Indian market contacts."  But Biosearch

20  offers only two theories in support of this allegation of "intentional" conduct.  First, Biosearch

21  alleges that Life Tech sought to provide materials to its customers at the lowest price, without

22  any factual allegations to establish that Life Tech's alleged actions were intentionally designed

23  to disrupt the relationship between Gene Logic and Biosearch, or that Life Tech "knew that the

24  interference was certain or substantially certain to occur as a result of its action."  *Korea Supply*,

25  29 Cal. 4th at 1154.  Just as the Supreme Court has found that pleading parallel conduct

26  between multiple entities is insufficient for a conspiracy claim to stand, pleading that a

27  company sought to sell its product is not a sufficient allegation that the company's acts were

28

1  designed to disrupt a different relationship.  *Twombly*, 550 U.S. 556-557.

2      Second, Biosearch's new allegation that Life Tech "intentionally" made "false and

3  misleading advertisements to Gene Logic" concerning Life Tech's right to sell its H1N1 Primer

4  and Probe Set containing BHQ®-labeled probes is similarly unavailing.  As noted above,

5  Biosearch has failed to allege facts demonstrating that such statements were "false" and thus

6  these allegations cannot support a counterclaim for intentional interference.  Nor are there any

7  factual allegations to support the conclusory contention that Life Tech "lured potential suppliers

8  for the Indian market, including Gene Logic, into purchasing kits from it, rather than from

9  Biosearch."

10     Each of these deficiencies warrants dismissal of this counterclaim.  Taken together,

11  these failures demonstrate why that dismissal should be with prejudice.

### 4.      Common Law Unfair Competition

13     Biosearch's final state law counterclaim alleges common law unfair competition.  It is

14  based entirely on the allegations that (a) "[b]y using probes labeled with BHQ®s subject to the

15  EULA," Life Tech was able to procure BHQ®s at a reduced cost," and (b) "Life Tech has

16  gained an unfair competitive advantage over Biosearch and profited from unauthorized sales of

17  BHQ®-labeled probes."  (Amended Counterclaim, Dkt. No. 22, ¶ 61).

18     Once more, Biosearch's counterclaim requires "unauthorized sales" of BHQ®s, i.e.,

19  sales in violation of the purported contract between Life Tech and Biosearch.  (*See id.* ¶ 24

20  ("Life Tech became a party to the EULA with Biosearch . . . .")).  In other words, this

21  counterclaim is premised on the theory that Life Tech was contractually bound by, and violated,

22  the terms of the purported contract with Biosearch.  Yet as discussed previously, Biosearch has

23  not adequately pled that it and Life Tech had any contractual relationship.  Nor has it

24  adequately pled that it has standing to enforce any contract between Life Tech and Glen

25  Research related to Life Tech's purchase of BHQ®s.  Thus, there is no basis for the conclusory

26  allegation that Life Tech unfairly competed with Biosearch by breaching its contractual duties

27  under the EULA, and it should be dismissed.  *See Berryman*, 152 Cal.App.4th at 1553.

28

Moreover, Biosearch has not properly pled the elements of a claim for common law unfair competition.  "The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." *Sybersound*, 517 F.3d at 1153 (quoting *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1263 (1992)); *see also Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1147 (9th Cir. 1997) ("Because Plaintiffs' allegations do not amount to 'passing off' or its equivalent, Defendants are correct that Plaintiffs' claim for unfair competition was properly dismissed."); *Morning Star Packing Co. v. SK Foods, L.P.*, 754 F. Supp. 2d 1230, 1238 (E.D. Cal. 2010) (granting motion to dismiss common law unfair competition claim where plaintiff failed to allege that "Defendants passed off their goods as those of another, which is required to bring an unfair competition claim under California common law").  The Amended Counterclaim contains no allegation that Life Tech has sought to pass off the BHQ®s as Life Tech's own product, and to the contrary, the purported advertisement that Biosearch attached as Exhibit B to the Amended Counterclaim expressly states that the Blackhole Quencher was manufactured by Biosearch.  (*See* Amended Counterclaim, Dkt. No. 22, Ex. B).  As such, Biosearch has not adequately pled a claim for common law unfair competition, and this counterclaim should be dismissed as well.

## C.    Biosearch's State Law Counterclaims Should Be Dismissed With Prejudice Because Amendment Would Be Futile

While courts will often grant leave to amend following dismissal under Rule 12(b)(6), there are several situations where leave to amend should not be granted.  Where, as here, amendment of the dismissed claims would be futile, leave to amend should be denied, and the dismissal should be with prejudice.  *See, e.g.*, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (courts need not provide leave to amend where it is clear that complaint could not be saved by any amendment); *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that futile amendments should not be permitted).  This includes situations where amending a complaint to avoid dismissal would require a party to plead inconsistent allegations.  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (to determine whether amendment would be futile, court examines

22

1    whether the complaint could be amended to cure the defect requiring dismissal "without

2    contradicting any of the allegations of [the] original complaint."); *Knowles v. Pacific Gas &*

3    *Elec. Co.*, No. C 07-2284 CW, 2008 WL 2705097, *3 (N.D. Cal. July 8, 2008) ("Leave to

4    amend should be liberally granted, but an amended complaint cannot allege facts inconsistent

5    with the challenged pleading.").

6         Here, the defects in the state law counterclaims cannot be remedied, and thus dismissal

7    should be with prejudice.  None of Biosearch's state law theories of liability – the alleged

8    breach of a contract between Life Tech and Biosearch and the other claims stemming from it –

9    can be re-pled to state a claim because the current allegations make clear that Life Tech has

10   only purchased BHQ® from Glen Research, and not from Biosearch, and that Biosearch has no

11   standing to enforce any contractual agreement between Life Tech and Glen Research.

12        Stated differently, Biosearch has essentially conceded that it did not enter into a direct

13   relationship with Life Tech in or after 2009, and thus it cannot plead the requisite contractual

14   relationship with Life Tech for the accused sales.  Biosearch should be estopped from now

15   trying to allege such a contractual relationship with Life Tech.  *See generally Hamilton v. State*

16   *Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel is intended to

17   "[p]revent a party from gaining an advantage by taking inconsistent positions . . . and to protect

18   against a litigant playing fast and loose with the courts").  At the same time, it has failed to

19   identify any basis on which it would have standing to enforce any contract between Life Tech

20   and Glen Research, and has not alleged that it is a third party beneficiary to such a contract.

21   Rather, it has conclusorily alleged that it was a party to the contract governing those sales,

22   which would be inconsistent with any possible future amendment to say it was a third party

23   beneficiary of such a contract.  Yet if it neither is a party nor has standing to enforce as a third

24   party beneficiary, it cannot state a claim under any of its state law theories.

25        Moreover, Biosearch has already two opportunities to correct the defects in its claims

26   against Life Tech.  The state law counterclaims asserted here were originally asserted in a

27   lawsuit that Biosearch filed in state court.  (*See* Request for Judicial Notice, Ex. A).  Faced with

28

_____
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF LIFE TECHNOLOGIES CORPORATION'S MOTION TO DISMISS
CASE NO. 3:10-cv-02665 JAH (MDD)

Life Tech's demurrer raising essentially the same arguments asserted here, Biosearch dismissed its state court action and re-filed its claims as counterclaims in this action.  (*See id.* Ex. C).  Yet, despite notice of the deficiencies in its original allegations and an opportunity to correct them, Biosearch opted to re-file the same defective claims with this Court.  Then, when faced with Life Tech's motion to dismiss the state law counterclaims in this action, Biosearch again chose to withdraw its claims, filing its Amended Counterclaim rather than oppose Life Tech's motion to dismiss.  As explained above, however, the amended counterclaims do not resolve the pleading deficiencies that have plagued these counterclaims from the beginning.  That failure to resolve the inadequacies in its counterclaims despite three separate attempts speaks volumes as to the futility of permitting further amendment, and warrants dismissal with prejudice here.  *See Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011) ("It is well-established that a court may dismiss an entire complaint with prejudice where plaintiffs have failed to plead properly after 'repeated opportunities.'").

## IV.    CONCLUSION

Biosearch has now had three chances to allege viable state law claims against Life Tech, and has failed in each of its attempts.  Its inability to allege the existence of a contract with Life Tech defeats not only its breach of contract counterclaim, but also the tort counterclaims which are based on that alleged breach.  Moreover, because Biosearch cannot amend its pleadings to allege such a contract without contradicting its earlier allegations, amendment here would be futile.  For these reasons, Life Tech respectfully requests that the Court dismiss the state law counterclaims (the First through Fifth Counterclaims) with prejudice.

Dated:  May 31, 2011                    KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP


By:   /s/Kenneth E. Keller
        KENNETH E. KELLER
        Attorneys for Plaintiff and Counterclaim-Defendant
        LIFE TECHNOLOGIES CORPORATION