1  DANIEL JOHNSON, JR., State Bar No. 57409
   RITA E. TAUTKUS, State Bar No. 162090
2  JOSEPH SONG, State Bar No. 239494
   MORGAN, LEWIS & BOCKIUS LLP
3  One Market, Spear Street Tower
   San Francisco, California  94105-1126
4  Telephone:    415.442.1000
   Facsimile:    415.442.1001
5  E-mail: djjohnson@morganlewis.com
   E-mail: rtautkus@morganlewis.com
6  E-mail: joseph.song@morganlewis.com

7  Attorneys for Defendant and Counterclaimant
   BIOSEARCH TECHNOLOGIES, INC.

8

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11

12  LIFE TECHNOLOGIES CORPORATION,        Case No. 10-CV-2665 JAH (MDD)

13                 Plaintiff,              **BIOSEARCH TECHNOLOGIES,
                                           INC.'S OPPOSITION TO LIFE
14         v.                              TECHNOLOGIES CORPORATION'S
                                           MOTION TO DISMISS
15  BIOSEARCH TECHNOLOGIES, INC.,          COUNTERCLAIMS**

16                 Defendant.

17  BIOSEARCH TECHNOLOGIES, INC.,          Hearing Date:   August 8, 2011
                                           Time:           2:30 p.m.
18                 Counterclaimant,        Courtroom:      11
                                           Judge:  The Honorable John A. Houston
19         v.

20  LIFE TECHNOLOGIES CORPORATION,

21                 Counterclaim-Defendant.

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
ATTORNEYS AT LAW
  SAN FRANCISCO

DB2/ 22429507.2                                         10cv2665 JAH (MDD)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   FACTUAL BACKGROUND ............................................................... 2

III.  LEGAL AUTHORITY ........................................................................ 3

IV.   ARGUMENT ....................................................................................... 3

    A.   Biosearch Has Adequately Pleaded a Breach of Contract Between Biosearch and Life Tech. ......................................................................... 3

        1.   Section 2204 Is the Applicable Legal Standard for Contracts Formation for the Sale of Goods. ................................................. 4

        2.   The EULA Is an Enforceable Contract Between Biosearch and Life Tech. ............................................................................... 4

        3.   Biosearch's Amended Counterclaims Detail a Valid Contract Between Biosearch and Life Tech. ............................................. 6

        4.   Life Tech's Attacks on the Valid Contract Between Biosearch and Life Tech Are Groundless. .................................................... 7

            a.   Privity of Contract Exists Between Biosearch and Life Tech. ......... 7

            b.   "Meeting of the Minds" Is Not Required Because the EULA Is Governed by Section 2204. ................................................ 8

        5.   Biosearch Has Pleaded All the Elements to State a Claim for Breach of Contract. ..................................................................... 8

        6.   Life Tech's Arguments Regarding Standing Are Groundless. ................... 9

    B.   Biosearch's State Law Claims Meet Rule 8 Requirements ...................................... 9

        1.   Biosearch Has Adequately Pleaded False Advertising Under Cal. Bus. & Prof. Code §17500 .................................................. 9

        2.   Biosearch Has Adequately Pleaded Unfair Competition Under Cal. Bus. & Prof. Code § 17200 ...................................... 10

        3.   Biosearch's Amended Counterclaims Moot Life Tech's Attack on Biosearch's Intentional Interference With Prospective Economic Advantage Claim ............................................................ 11

        4.   Biosearch Has Adequately Pleaded Common Law Unfair Competition ................................................................................ 13

    C.   Should the Court Determine That Biosearch's Pleadings Are Inadequate, Biosearch Should Be Granted Leave to Amend ................................ 14

V.    CONCLUSION .................................................................................. 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona Cartridge Manufacturers Assoc., Inc. v. Lexmark Int'l Inc.,*
421 F.3d 981 (9th Cir. 2005)..................................................................*passim*

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ...........................................................................1, 3, 9

*B. Aronson, Inc. v. Bradshaw Int'l, Inc.,*
2011 U.S. Dist. LEXIS 47769 (C.D. Cal. Apr. 25, 2011)...........................12

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007).............................................................................1, 3, 6, 9

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) .................................................................................10

*City Solutions, Inc. v. Clear Channel Commc'ns,*
365 F.3d 835 (9th Cir. 2004) .......................................................................14

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.,*
35 Cal. 3d 197 (1983) ..................................................................................10

*Conley v. Gibson,*
355 U.S. 41 (1957).........................................................................................3

*Coupons, Inc. v. Stottlemire,*
588 F. Supp. 2d 1069 (N.D. Cal. 2008) ..................................................13, 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
519 F.3d 1025 (9th Cir. 2008).....................................................................16

*Monex Deposit Co. v. Gilliam,*
680 F. Supp. 2d 1148 (C.D. Cal. 2010) .......................................................11

*Papasan v. Allain,*
478 U.S. 265 (1986).......................................................................................3

*Podolsky v. First Healthcare Corp.,*
50 Cal. App. 4th 632 (1996) .........................................................................11

*Steiner v. Mobil Oil Corp.,*
20 Cal. 3d 90 (1977)......................................................................................8

**Statutes**

Cal. Bus. & Prof. Code § 17200 .............................................................2, 10, 11

Cal. Bus. & Prof. Code § 17500 ...............................................................2, 9, 10

Cal. Civ. Code § 1565 ....................................................................................8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10cv2665 JAH (MDD)

DB2/ 22429507.2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Com. Code § 2204 ................................................................................. 1, 4, 8, 14

Cal. Com. Code § 2204(1) ............................................................................... 4

Cal. Com. Code § 2204(2) ............................................................................... 4

**Rules**

Fed. R. Civ. P. 8 ......................................................................................... *passim*

Fed. R. Civ. P. 8(a)(2) ................................................................................... 3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10cv2665 JAH (MDD)

DB2/ 22429507.2

## I.   **INTRODUCTION**

Life Technologies Corporation's ("Life Tech") motion to dismiss is a house of cards that rests almost entirely on its assertion that Biosearch Technologies, Inc. ("Biosearch") did not plead a valid contract between Biosearch and Life Tech.  First, Life Tech attacks Biosearch's breach of contract counterclaim by arguing Biosearch did not plead the existence of a valid contract for the sales of BHQ®s in 2009.  Then, Life Tech attacks Biosearch's remaining state law counterclaims by arguing they are premised on the purported non-existent contract.  However, the foundation of Life Tech's motion crumbles because Life Tech relies on the wrong standard for contract formation.  Life Tech relies on general contract law rather than the relevant standard for **sales of goods**: Cal. Com. Code § 2204 ("Section 2204").  As a result, Life Tech incorrectly concludes that no contract was formed between Biosearch and Life Tech regarding Biosearch's BHQ® products.  As the foundation of Life Tech's motion crumbles, so does the house of cards Life Tech built on it.

Life Tech incorrectly concludes that no valid contract exists between itself and Biosearch because it purchased the relevant BHQ®s from third-party distributor Glen Research Corp. ("Glen Research") and, thus, was not a party to the end user license agreement ("EULA") that existed between Biosearch and Glen Research.  However, Ninth Circuit case law applying Section 2204 makes clear that when a consumer has notice of a license agreement and its terms and, yet, decides to accept the terms by purchasing and using the product, the consumer is a party to the license agreement.  This is true even if the consumer purchases the product from a third-party distributor and not directly from the manufacturer of the product.  Therefore, Life Tech entered into a contract with Biosearch when it bought and used the BHQ®s with full knowledge of the EULA and its restrictions.

Accordingly, Biosearch has pleaded a valid contract between Biosearch and Life Tech and satisfied all the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure ("Rule 8") with detailed allegations for each of its state law counterclaims.  While the popular trend after the Supreme Court's *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* cases is to attack the pleadings, parties making such motions must have substance to their attack and show that a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1                          10cv2665 JAH (MDD)

DB2/ 22429507.2

1   pleading fails to meet the requirements of Rule 8.  Life Tech's motion, based on an incorrect

2   standard of contract law, wholly fails to make such a showing.

3   **II.      FACTUAL BACKGROUND**

4           On April 23, 2010, Biosearch filed a complaint against Life Tech in California Superior

5   Court, Alameda County ("Superior Court Action").  Biosearch's complaint in the Superior Court

6   Action asserted claims of: (1) breach of contract, (2) unfair competition under Cal. Bus. & Prof.

7   Code § 17200, (3) common law unfair competition, (4) unjust enrichment, (5) unfair advertising

8   under Cal. Bus. & Prof. Code § 17500, and (6) interference with prospective economic advantage.

9   (*See* Req. for Judicial Notice [Dkt. No. 26-2], Ex. A.)

10          On July 20, 2010, Life Tech moved to change venue to San Diego County.  On September

11  30, 2010, the court issued an order transferring the case to San Diego County.  Life Tech

12  thereafter filed a demurrer to the complaint on December 9, 2010, which was set for a hearing on

13  March 25, 2011.  The opposition to the demurrer was due on March 14, 2011.

14          On December 27, 2010, while its demurrer to the Superior Court Action was pending, Life

15  Tech filed its complaint in this action alleging that Biosearch infringes U.S. Patent No. 7,160,997.

16  Life Tech served the complaint on January 12, 2011.  On March 4, 2011, Biosearch filed its

17  answer and counterclaims [Dkt. No. 13] ("Counterclaims"), which included five out of the six

18  state law claims Biosearch had asserted in the Superior Court Action.[1]  These five counterclaims

19  were virtually identical to the claims asserted in the Superior Court Action.  In order not to waste

20  judicial and party resources by litigating two actions in separate courts, Biosearch decided to

21  voluntarily dismiss the Superior Court Action and include most of its claims in the Superior Court

22  Action as counterclaims in this action.  On the same day that Biosearch filed its Counterclaims in

23  this action, Biosearch filed its request for dismissal in the Superior Court Action.  The Superior

24  Court Action was dismissed before Biosearch's deadline for opposing Life Tech's pending

25  demurrer.  Consequently, the Superior Court never made any determination on the demurrer.

26          On April 25, 2011, Life Tech filed its Motion to Dismiss Counterclaims of Defendant

27  Biosearch [Dkt. No. 18-1].  On May 16, pursuant to its Rule 15(a) right to file an amended

28
_____
[1]         Biosearch did not assert unjust enrichment in its Counterclaims.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                                              10cv2665 JAH (MDD)

DB2/ 22429507.2

1  pleading as a matter of course, Biosearch filed its First Amended Answer and Counterclaims

2  [Dkt. No. 22] ("Amended Counterclaims").  The Amended Counterclaims include additional

3  allegations in support of Biosearch's counterclaims.  On May 31, 2011, Life Tech withdrew its

4  motion to dismiss Biosearch's original counterclaims [Dkt. No. 24] and then filed its Motion to

5  Dismiss Defendant Biosearch's First Amended Counterclaims [Dkt. No. 26-1] ("Motion").

6  **III.    LEGAL AUTHORITY**

7       Rule 8 requires that a pleading stating a claim for relief contain a "short and plain

8  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The

9  purpose of this pleading requirement is to "give the defendant fair notice of what the . . . claim is

10  and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

11  (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "[A] plaintiff's obligation to provide the

12  'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

13  formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v.

14  Allain*, 478 U.S. 265, 286 (1986)).  However, the Supreme Court made clear that Rule 8 "do[es]

15  not require heightened fact pleading of specifics." *Id.* at 570.  "To survive a motion to dismiss, a

16  complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that

17  is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550

18  U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

19  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

20  *Id.*

21  **IV.    ARGUMENT**

22

23  **A.    Biosearch Has Adequately Pleaded a Breach of Contract Between Biosearch and Life Tech.**

24       Life Tech's attack of Biosearch's breach of contract claim rests entirely on its false

25  assertions that Life Tech is not a party to the EULA and that its purchase of BHQ®s from Glen

26  Research are not governed by the EULA.  (Motion at 10.)  Although Life Tech concludes that

27  Biosearch's allegations of a valid contract between Biosearch and Life Tech are "novel and

28  convoluted" (Motion at 13), Life Tech's statements reveal its ignorance of contract law rather

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3                                    10cv2665 JAH (MDD)

1    than any deficiency in Biosearch's pleadings.

2
       **1.    Section 2204 Is the Applicable Legal Standard for Contracts**
3              **Formation for the Sale of Goods.**

4          Under California law, a "contract for the sale of goods may be made in any manner

5    sufficient to show agreement, including conduct by both parties which recognizes the existence of

6    such a contract." CAL. COM. CODE § 2204(1).  Additionally, "agreement sufficient to constitute a

7    contract for a sale may be found even though the moment of its making is undetermined." *Id.* at

8    § 2204(2).  A contract between a consumer and a manufacturer restricting the use of a product

9    may be formed, even when the consumer purchases a product through a wholesaler or distributor,

10   and not directly from the manufacturer. *Arizona Cartridge Manufacturers Assoc., Inc. v.*

11   *Lexmark Int'l Inc.*, 421 F.3d 981, 987-88 (9th Cir. 2005).

12
       **2.    The EULA Is an Enforceable Contract Between Biosearch and Life**
13            **Tech.**

14         In *Lexmark*, the Ninth Circuit held that a license agreement between Lexmark and

15   consumers was enforceable under Section 2204 because the consumers: (1) had notice of the

16   condition, (2) had a chance to reject the contract on that basis, and (3) received consideration in

17   the form of a reduced price in exchange for the limits placed on the product.  421 F.3d at 988.

18   The facts in *Lexmark* are strikingly similar to this case.  Lexmark sold printer cartridges to

19   distributors, who then sold the cartridges to consumers. *Id.* at 988.  Lexmark sold certain

20   cartridges with a license agreement printed on the outside of the package. *Id.* at 983-84.  The

21   license agreement restricted the consumer from giving the depleted cartridge to any

22   remanufacturer other than Lexmark. *Id.* at 983-84.  In exchange for agreeing to these limitations,

23   Lexmark offered the cartridges at a reduced price. *Id.* at 983.  The Ninth Circuit held that there

24   was a valid contract between Lexmark and the consumers who buy and open the cartridge

25   packages because "the language on the outside of the cartridge package specifies the terms under

26   which a consumer may use the purchased item." *Id.* at 987.  Additionally, the Ninth Circuit noted

27   that the consumer could read the terms of the license agreement on the box before deciding to

28   accept them and that by opening the package, the consumer accepts those terms. *Id.* at 987.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22429507.2

4                                      10cv2665 JAH (MDD)

1    Likewise, all the elements considered by the Ninth Circuit in *Lexmark* are found here and

2  a valid contract exists between Biosearch and Life Tech.  First, Life Tech had notice of the

3  limitation that BHQ®s purchased from Glen Research could only be used for research and

4  development purposes.  Biosearch has alleged in its Amended Counterclaims that Life Tech had

5  notice of the license agreement as early as 2001 when Invitrogen Corporation – Life Tech's

6  predecessor[2] – purchased BHQ®s from Biosearch under the EULA.  (Dkt. No. 22 at 6, ¶ 10.)

7  Additionally, Biosearch alleged that Life Tech had further notice of the EULA because it was

8  "published on Biosearch's website" and "included in any shipments made . . . by licensed

9  distributors to customers."  (*Id.*)

10    Second, Life Tech had a chance to reject the license agreement on the basis of the

11  limitations.[3]  Invitrogen was aware of the existence and terms of the EULA in 2001 when it

12  purchased BHQ®s from Biosearch under the terms of the EULA.  Thus, from the beginning of

13  Life Tech's formation in 2008 by the combination of Invitrogen and Applied Biosystems, Life

14  Tech was aware of the existence and terms of the EULA.  Biosearch's Amended Counterclaims

15  allege that Life Tech could have rejected the EULA by choosing not to purchase the BHQ®s

16  from Glen Research.  (Dkt. No. 22 at 8, ¶ 22.)  Instead, when Life Tech "learned sometime in

17  2009 that Biosearch's BHQ® had been selected as the quencher of choice for use in the H1N1

18  probes," Life Tech "arranged with a Biosearch third-party supplier/ distributor, Glen Research

19  Corporation ("Glen Research"), to purchase BHQ®s from the third-party distributor of BHQ®s."

20  (*Id.* at 7, ¶ 14.)  Life Tech's prior knowledge of the EULA and its decision in 2009 to purchase

21  the BHQ®s under those limitations show that Life Tech had a chance to reject the license.

22  Moreover, Biosearch has specifically alleged that "Life Tech had the opportunity to reject the

23  EULA by not purchasing the BHQ®s from Glen Research and by purchasing, instead, BHQ®s

---

24  [2]    Life Tech was formed on November 21, 2008 by the combination of Invitrogen
25  Corporation and Applied Biosystems Inc.  (*See* Declaration of Rita E. Tautkus ISO Biosearch's
Opposition to Life Tech's Motion to Dismiss Counterclaims ("Tautkus Decl."), Ex. A
(http://ir.lifetechnologies.com/releasedetail.cfm?ReleaseID=522515).)
26  [3]    Life Tech falsely characterizes Biosearch's allegations regarding Life Tech's opportunity
to reject the EULA as "the most telling example of Biosearch trying to avoid its pleading
27  obligations."  (Motion at 12.)  Quite the contrary, these allegations relate directly to one of the
three elements expressly considered by the Ninth Circuit in holding that the contract on its face
28  was enforceable. *Lexmark*, 421 F.3d at 988.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5                    10cv2665 JAH (MDD)

DB2/ 22429507.2

1   under a commercial license." (*Id.* at 8, ¶ 22.)

2       Third, in exchange for the use restrictions, Life Tech received consideration in the form of

3   receiving the BHQ®s.  Biosearch's Amended Counterclaims state that Life Tech obtained the

4   BHQ®s, which it ultimately used in its H1N1 kits.  (Dkt. No. 22 at 7-8, ¶¶ 14, 18, 19.)  In

5   addition, Life Tech received further consideration in the form of a reduced price.  Biosearch's

6   Amended Counterclaims specifically allege that "because these BHQ®s were subject to a

7   limited-use license, Life Tech was able to purchase these BHQ®s at a price far below what

8   BHQ®s licensed for commercial uses, such as for H1N1 testing, command and are in fact sold

9   for."[4]  (*Id.*, ¶ 15.)  Moreover, Biosearch alleged that Life Tech received consideration in the form

10   of a reduced price in exchange for the restrictions on the BHQ®s sold by Glen Research.  (*Id.*, ¶

11   23.)

12       In sum, the same three factors that the Ninth Circuit considered in *Lexmark* to determine

13   the existence of a valid contract exist here.  Biosearch has specifically pleaded each of these

14   factors.

### 3. Biosearch's Amended Counterclaims Detail a Valid Contract Between Biosearch and Life Tech.

17       Biosearch's Amended Counterclaims describe in great detail the facts that support a valid

18   contract between Biosearch and Life Tech.  The Amended Counterclaims fully meet the

19   requirements of Rule 8 and are far more than mere "labels and conclusions" or a "formulaic

20   recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  The Amended

21   Counterclaims state:

> From as early as 2001, Biosearch sold BHQ® probes, active esters, and amidites to Defendant Life Tech's predecessor, Invitrogen Corporation ("Invitrogen").  At all times relevant herein Biosearch included a written comprehensive limited use Agreement (the "EULA") with all purchases of its BHQ®s. . . . The EULA was included in all contracts, included in the Biosearch Licensee Handbook, published on Biosearch's website, and included in any shipments made by Biosearch to customers or licensed distributors or by licensed distributors to customers.  The EULA prohibits use of BHQ®s, or products incorporating them, for anything other than research and development purposes and explicitly prohibits "any commercial, clinical, in vitro diagnostic or other use" of BHQ®s, or products incorporating

---

[4]   This allegation was made in the claim for intentional interference with prospective economic advantage.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6      10cv2665 JAH (MDD)

DB2/ 22429507.2

> them, and further disclaims any "implied license for commercial use" with respect to the same.  Under the EULA, "commercial use" includes but is not limited to the sale of BHQ®s, or products incorporating them.
>
> . . . .
>
> On information and belief, Life Tech was aware of the EULA's existence and terms, understood the limitations imposed by the EULA, and agreed to be bound by the terms of the EULA."

(Dkt. No. 22 at 6-8, ¶¶ 10, 17.)  Moreover, Biosearch has alleged that Life Tech's purchases of BHQ®s from Glen Research were governed by the EULA:

> Biosearch is informed and believes, and on that basis alleges, that Life Tech learned sometime in 2009 that Biosearch's BHQ® had been selected as the quencher of choice for use in the H1N1 probes, and arranged with a Biosearch third-party supplier, Glen Research Corporation ("Glen Research"), to purchase BHQ®s from the third-party distributor of BHQ®s.  The third-party distributor's distribution rights specifically limited the use of BHQ®s to research and development only and excluded commercial, clinical, and in vitro diagnostic uses.

(*Id.* at 7, ¶ 14.)

Biosearch's Amended Counterclaims identify the contract (the EULA), the specific parties to the contract (Biosearch and Life Tech), the relevant terms of the contract (the EULA's restrictions against any commercial, clinical, or *in vitro* diagnostic uses of the BHQ®s), and the relevant 2009 BHQ® sales that were covered by the contract.  (*See* Dkt. No. 22 at 5-9, ¶¶ 1-28.)  By alleging these specific details, Biosearch unquestionably meets the Rule 8 requirements for pleading the existence of a valid contract.

### 4.   Life Tech's Attacks on the Valid Contract Between Biosearch and Life Tech Are Groundless.

#### a.   Privity of Contract Exists Between Biosearch and Life Tech.

Life Tech argues that Biosearch is not a party to the EULA because it was "not directly involved" with the sales of BHQ®s from Glen Research to Life Tech.  (Motion at 7.)  However, in *Lexmark*, the Ninth Circuit expressly rejected the argument that there was no privity of contract between Lexmark and its end consumers, even though the consumers bought the licensed products from a third-party distributor and not directly from Lexmark:  "The privity requirement is met here, because *the consumer is a party* to the contract with Lexmark.  As described above, the contract is formed when the final purchaser opens the cartridge box with notice of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

10cv2665 JAH (MDD)

DB2/ 22429507.2

1   restriction on reuse." *Lexmark*, 421 F.3d at 988 (emphasis in original). Here, Biosearch and Life

2   Tech became parties to the EULA when Life Tech purchased and used the BHQ®s with full

3   notice of the restrictions on use.

4        Accordingly, the Court should reject Life Tech's arguments that no contract existed

5   between Biosearch and Life Tech. *Lexmark* invalidates Life Tech's arguments that Biosearch and

6   Life Tech are not parties to the EULA.

7
8                    **b.    "Meeting of the Minds" Is Not Required Because the EULA Is
                            Governed by Section 2204.**

9        Life Tech argues that there was no meeting of the minds and that the Amended

10  Counterclaims "do[] not establish that Life Tech assented to [the EULA's] terms." (Motion at

11  12.)  Life Tech also cites to Cal. Civ. Code § 1565 for support that a meeting of the minds is required.

12  (Motion at 13.)  Again, Life Tech is mistaken about the law.  The *Lexmark* case makes clear that,

13  in the context of sales of goods, the relevant statutory authority is Section 2204. *See Lexmark*,

14  421 F.3d at 987.  Section 2204 applies here, as this case stems from Life Tech's contractual

15  violations by its improper **sale of goods**: Biosearch's BHQ®s.

16       The California Supreme Court has explicitly stated that Section 2204 does not require a

17  meeting of the minds. *Steiner v. Mobil Oil Corp.*, 20 Cal. 3d 90, 103 (1977) ("The official

18  comments accompanying section 2204, other provisions of the code, and the case law interpreting

19  section 2204, all support the conclusion that section 2204 does not require mutual assent to all

20  essential terms.")  None of the cases Life Tech cites to for the "meeting of the minds"

21  requirement relates to contracts for the sale of goods.  Rather, all the cases cited by Life Tech

22  relate to either employment contracts or settlement agreements and are inapposite.

23
24                    **5.    Biosearch Has Pleaded All the Elements to State a Claim for Breach of
                            Contract.**

25       Not only has Biosearch pleaded all the elements of a valid contract, Biosearch has pleaded

26  all the elements listed by Life Tech for a California breach of contract claim: (1) a contract, (2)

27  plaintiff's performance, (3) defendant's breach, and (4) damages. (Motion at 9.)  As described

28  above, a valid contract – the EULA – existed between Biosearch and Life Tech.  With respect to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22429507.2

1    Biosearch's performance, the Amended Counterclaims allege that Biosearch provided BHQ®s to

2    third-party supplier Glen Research, which were purchased from Glen Research by Life Tech.

3    (Dkt. No. 22 at 7-8, ¶¶ 14, 24.)  Life Tech's breach of the EULA is described in the Amended

4    Counterclaims as including the BHQ®s in its H1N1 kits and selling them for commercial,

5    clinical, and/or in vitro purposes.  (*Id.* at 8-9, ¶¶ 18, 25.)  Also, Biosearch alleged damages of

6    "harm to its business" from Life Tech's breach[5].  (*Id.* at 9, ¶¶ 26.)

7            Accordingly, Biosearch has pleaded all the elements of a breach of contract with great

8    detail and specificity, meeting the requirements of Rule 8 elucidated in *Twombly* and *Iqbal*.

9                    **6.      Life Tech's Arguments Regarding Standing Are Groundless.**

10           Life Tech's argument that Biosearch lacks standing to assert a breach of contract claim

11   relies entirely on Life Tech's false assumption that Biosearch is neither a party nor a third-party

12   beneficiary to the contract.  (Motion at 5.)  As described above, Biosearch indeed is a party to the

13   contract at issue.  *See supra* section IV.A.4.a.  Accordingly, Biosearch has standing to assert each

14   of its five state law counterclaims and Life Tech's lack of standing arguments are completely

15   groundless.

16           **B.      Biosearch's State Law Claims Meet Rule 8 Requirements**

17           The foundation of Life Tech's attack on the remaining state law claims is its false

18   assertion that Biosearch's breach of contract claim is inadequately pleaded.  (Motion at 13.)  That

19   foundation has crumbled, and alongside it Life Tech's attacks on the remaining claims.  The

20   "death knell" apparently heard by Life Tech (*id.*) rings not for Biosearch's claims, but Life Tech's

21   Motion.

22

23                    **1.      Biosearch Has Adequately Pleaded False Advertising Under Cal. Bus.
                            & Prof. Code §17500**

24           Life Tech's only attack on Biosearch's false advertising counterclaim is that it is based on

25   the alleged insufficiently pleaded breach of contract claim.  (Motion at 10.)  This argument fails

26   because, as described above, Biosearch has adequately pleaded the existence of a contract

27   _____
[5]        Biosearch has also specifically alleged the loss of millions of dollars of sales and "loss of
28   a competitive position in the market for its BHQ®-labeled probes" in its false advertising claim.
     (Dkt. No. 22 at 11-12, ¶¶ 43, 48.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22429507.2

1    between Biosearch and Life Tech for the BHQ®s purchased from Glen Research.  *See supra*

2    section IV.A.

3

4    **2.    Biosearch Has Adequately Pleaded Unfair Competition Under Cal. Bus. & Prof. Code § 17200**

5            Similarly, Life Tech argues that Biosearch's Cal. Bus. & Prof. Code § 17200 ("Section

6    17200") counterclaim should be dismissed because of the claim's "reliance on [Biosearch's]

7    inadequately pled breach of contract counterclaim." (Motion at 16.)  Again, this argument fails

8    because Biosearch has adequately pleaded the existence of a contract between Life Tech and

9    Biosearch for the BHQ® purchases from Glen Research.  *See supra* section IV.A.

10           Life Tech also argues that "Biosearch has not identified any conduct of Life Tech that is

11   'forbidden by law . . . .'" and that a breach of contract claim is insufficient to state a claim under

12   the "unlawful" prong of Section 17200.  (Motion at 16.)  However, Biosearch does not rely

13   merely on breach of contract as the basis of its counterclaim.  Biosearch identifies Life Tech's

14   unlawful conduct of false advertising as a basis for this counterclaim.

15           "A violation of the [§ 17500] false advertising law automatically gives rise to a violation

16   of the [§ 17200] unfair competition provision."  *Lexmark*, 421 F.3d at 986 (citing *Comm. on*

17   *Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983).)  Biosearch's

18   counterclaim alleges that Life Tech violated Section 17200 "because Life Tech falsely advertised

19   that it had a right to sell the BHQ®s in its H1N1 Kits."  (Dkt. No. 22 at 11, ¶ 46.)  Moreover,

20   Biosearch's Section 17200 counterclaim specifically realleges Biosearch's § 17500 unfair

21   advertising counterclaim.  (*See id.* at 10, ¶ 36.)  Accordingly, Biosearch has adequately pleaded a

22   valid counterclaim for Life Tech's violation of Section 17200 through its unlawful conduct of

23   false advertising.

24           Life Tech also attacks Biosearch's pleadings of the "unfair prong" of Section 17200.

25   However, satisfying the "unlawful" prong is sufficient for a violation of § 17200.  *Cel-Tech*

26   *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("Because Business and

27   Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair

28   competition – acts or practices which are unlawful, or unfair, or fraudulent.  In other words, a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10                    10cv2665 JAH (MDD)

DB2/ 22429507.2

1  practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." (quoting

2  *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996)) (internal quotation marks

3  omitted)).  Biosearch has sufficiently pleaded a violation of Section 17200 under the "unlawful"

4  prong of the statute and this counterclaim should not be dismissed.  Should the Court determine

5  that any other prong of Section 17200 is inadequately pleaded, Biosearch requests leave to amend

6  the counterclaim regarding the other prongs of Section 17200.

7          3.      **Biosearch's Amended Counterclaims Moot Life Tech's Attack on**

                      **Biosearch's Intentional Interference With Prospective Economic**

8                        **Advantage Claim**

9        Life Tech attacks Biosearch's counterclaim for intentional interference with prospective

10  economic advantage ("IIPEA") by arguing, once again, that Biosearch did not sufficiently allege

11  the existence of a contract between Biosearch and Life Tech. (Motion at 18.)  As described

12  above, Life Tech's attack is meritless because Biosearch's Amended Counterclaims provide great

13  detail regarding the EULA and fully meet the pleading requirements of Rule 8 for a breach of

14  contract claim.  *See supra* section IV.A.

15        Life Tech also asserts that Biosearch's counterclaim cannot stand because "the only

16  'wrongful act' alleged here is Life Tech's purported breach of [] a contract" and a breach of

17  contract cannot form the basis for an IIPEA claim.  (Motion at 19.)  Life Tech is incorrect, again.

18  Biosearch's Amended Counterclaims allege a wrongful act independent of Life Tech's breach of

19  contract:  Life Tech's false advertising.  Four consecutive paragraphs of allegations detail Life

20  Tech's acts of false advertising to Gene Logic and other potential suppliers. (*See* Dkt. No. 22 at

21  13, ¶¶ 55-58.)

22        Life Tech then asserts that Biosearch has not sufficiently pleaded "defendant's knowledge

23  of the relationship," the second element of IIPEA. (Motion at 19-20.)  Life Tech argues without

24  any support that Biosearch must allege when, where, and how Life Tech learned of this

25  relationship.  (*Id.* at 20.)  Rule 8 does not require this level of detail.  For example, in *Monex*

26  *Deposit Co. v. Gilliam*, 680 F.Supp.2d 1148, 1162-63 (C.D. Cal. 2010), the court held that even

27  though the defendants did not have specific knowledge of the plaintiff's relationship with the

28  particular customer that was the basis of the IIPEA claim, the defendants' "general knowledge

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                                    10cv2665 JAH (MDD)

DB2/ 22429507.2

1    that [plaintiff] had economic relationships with its customers" was sufficient to satisfy the second

2    element of IIPEA.  Clearly, the court did not consider that plaintiffs were required to plead when,

3    where, and how defendants learned of the relationship when it did not even require that the

4    plaintiff plead specific knowledge of a particular customer.

5         Here, Biosearch has alleged that "Life Tech knew of Biosearch's ongoing business

6    relationships with governments and other entities around the world with respect to Biosearch's

7    own H1N1 kits" and "further knew of Biosearch's marketing activities concerning the Biosearch

8    H1N1 kits." (Dkt. No. 22 at 12, ¶ 51.)  Furthermore, Biosearch plainly alleges that "Life Tech

9    knew of Biosearch's relationships with potential suppliers to the Indian market, including

10    Biosearch's relationship with Gene Logic."  (*Id.,* ¶ 52.)

11         Additionally, courts have found allegations nearly identical to Biosearch's as sufficient for

12    satisfying Rule 8.  For example, in *B. Aronson, Inc. v. Bradshaw Int'l, Inc.*, 2011 U.S. Dist.

13    LEXIS 47769, at *18 (C.D. Cal. Apr. 25, 2011), the court held that the plaintiffs' allegations in

14    their first amended complaint were sufficient for their IIPEA claim.  (Tautkus Decl., Ex. B.)  An

15    inspection of the first amended complaint in that case shows that the allegation regarding the

16    second element of IIPEA was merely "DEFENDANTS knew about the above-referenced

17    agreements/business relationships between ARONSON and various third parties."  (Tautkus

18    Decl., Ex. C at 16, ¶ 104.)  Similarly, Biosearch's pleadings sufficiently allege the second

19    element of IIPEA.

20         Life Tech also asserts that Biosearch has not adequately pleaded the third element of

21    "intentional acts on the part of the defendant designed to disrupt the relationship."  (Motion at 19-

22    20.)  Life Tech argues that because no valid contract existed to restrict Life Tech's use of

23    BHQ®s, there is no basis for alleging that its advertising of BHQ®s is false.  (*See* Motion at 21

24    ("Biotech has failed to allege facts demonstrating that such statements were 'false' and thus these

25    allegations cannot support a counterclaim for intentional interference.").)  However, Life Tech's

26    argument is again premised on the incorrect assumption that Biosearch did not plead a valid

27    contract.  Because there was a valid contract between Biosearch and Life Tech that restricted Life

28    Tech from using BHQ®s for commercial purposes, its advertisement of BHQ®s misled others

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                                    10cv2665 JAH (MDD)

DB2/ 22429507.2

1    into believing it had a right to sell them.

2         Moreover, Biosearch has detailed Life Tech's actions of falsely advertising to Gene Logic

3    and other potential Indian suppliers that it had a right to sell products containing the BHQ®s.

4    (Dkt. No. 22 at 13, ¶¶ 55, 56.)  Biosearch has also alleged that Life Tech knew the use of BHQ®s

5    was restricted by the EULA that Life Tech's actions were intended "to disrupt Biosearch's

6    potential sales of H1N1 kits to these suppliers, including Gene Logic." (*Id.* at 13, ¶¶ 53, 56.)  In

7    sum, Biosearch has adequately pleaded the third element of the IIPEA counterclaim.

8         Biosearch has pleaded in great detail all the elements of IIPEA, satisfying the

9    requirements of Rule.  In addition, Life Tech's attacks on Biosearch's pleading of IIPEA are

10   groundless.  Accordingly, the Court should not dismiss this counterclaim.

11        **4.    Biosearch Has Adequately Pleaded Common Law Unfair Competition.**

12        Life Tech's attack on Biosearch's common law unfair competition claim begins with its

13   assertion that "Biosearch has not adequately pled that it and Life Tech had any contractual

14   relationship." (Motion at 21.)  As described above, Life Tech's assertions are groundless and

15   Biosearch has adequately pleaded the existence of a contract between itself and Life Tech. *See*

16   *supra* section IV.A.

17        Life Tech then asserts that Biosearch's counterclaim must be dismissed because it

18   "contains no allegation that Life Tech has sought to pass off the BHQ®s as Life Tech's own

19   product." (Motion at 22.)  However, common law unfair competition is not so limited.  For

20   example, in *Coupons, Inc. v. Stottlemire*, 588 F. Supp. 2d 1069, 1075 (N.D. Cal. 2008), the court

21   denied a defendant's motion to dismiss a claim for common law unfair competition, even though

22   the defendant was not alleged to have passed off the plaintiff's services or product as its own.

23   The plaintiff was an online provider of coupons who used software to limit the number of times a

24   user could print a coupon and limit the total number of coupons printed. *Id.* at 1072.  The

25   defendant was alleged to have created software that allowed users to gain repeated, unauthorized

26   access to the coupons. *Id.* at 1072.  The plaintiff did not allege that the defendant was passing off

27   defendant's goods as that of the plaintiff's, and yet the court did not dismiss the claim.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22429507.2

1    Moreover, the *Coupons, Inc.* court identified the following four elements of common law

2    unfair competition:

> (1) a substantial investment of "time, skill or money in developing its property";
> (2) appropriation and use of the property by another company at little or no cost;
> (3) the appropriation and use of the "property was without the authorization or
> consent"; and (4) injury by the appropriation and use by the other company.

6    *Coupons, Inc.*, 558 F. Supp. 2d at 1075 (citing *City Solutions, Inc. v. Clear Channel Commc'ns*,

7    365 F.3d 835, 842 (9th Cir. 2004)).  Biosearch has pleaded all of the above four elements.

8    Biosearch alleged that it "invested substantial time and money in developing BHQ®s." (Dkt. No.

9    22 at 14, ¶ 60.)  Additionally, Biosearch alleged that it developed the BHQ® technology and that

10   it has been patented and licensed to numerous biotechnology companies. (*Id.* at 6, ¶ 9.)

11   Biosearch pleaded the second element by stating that "Life Tech was able to use BHQ®s at a

12   substantially reduced cost" through its unauthorized sales. (*Id.* at 14, ¶ 61.)  With respect to the

13   third element, Biosearch alleged that Life Tech made "unauthorized sales of BHQ®-labeled

14   probes" and that its sales are "in violation of the EULA." (*Id.* at 14, ¶¶ 61, 62.)  Finally,

15   Biosearch pleaded the fourth element by stating that "[b]y reason of the alleged acts and conduct

16   of Life Tech, Biosearch has suffered and will continue to suffer harm and damage, including the

17   loss of a competitive position in the market for its BHQ®-labeled probes." (*Id.* at 14, ¶ 62.)

18   In summary, common law unfair competition is not limited to "passing off" situations and

19   Biosearch has pleaded specific and detailed allegations for each of the four elements.

20   Accordingly, Biosearch has fully satisfied the requirements of Rule 8 for its common law unfair

21   competition counterclaim and this counterclaim should not be dismissed.

22   **C.    Should the Court Determine That Biosearch's Pleadings Are Inadequate,**

23   **Biosearch Should Be Granted Leave to Amend**

24   Should this Court determine that any of Biosearch's Amended Counterclaims are

25   inadequately pleaded, Biosearch requests leave to amend.  Life Tech incorrectly argues that

26   Biosearch's allegations of a valid contract between Biosearch and Life Tech are inconsistent with

27   its allegations that Life Tech only bought BHQ®s from Glen Research. (Motion at 23.)  Life

28   Tech's perception of an inconsistency results from its ignorance of contract law.  Section 2204

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14                           10cv2665 JAH (MDD)

DB2/ 22429507.2

1    governs the formation of contracts for the sale of goods and allows for contract formation through

2    end user license agreements. *See Lexmark*, 421 F.3d at 987-88.  Thus, Biosearch's allegations are

3    not inconsistent and there would be no futility in amending Biosearch's breach of contract

4    counterclaim or any of the other counterclaims that stem from it.  Should the Court find that any

5    of Biosearch's state law counterclaims does not meet the pleading requirements of Rule 8,

6    Biosearch can amend the claim to include additional detail.

7            Life Tech also attempts to make much out of Biosearch's voluntary dismissal after Life

8    Tech filed its demurrer.  Life Tech asserts that Biosearch failed to correct its purported

9    deficiencies after Life Tech filed a demurrer in the Superior Court Action.  (Motion at 23-24.)

10   However, the demurrer in that case was never adjudicated.  The Superior Court never made any

11   determination on Life Tech's demurrer and certainly did not order Biosearch to amend its

12   complaint.  Biosearch voluntarily dismissed the Superior Court Action before the court took any

13   action on Life Tech's demurrer.  Thus, Life Tech's demurrer amounted to nothing more than

14   mere allegations.  The Superior Court never indicated any agreement with Life Tech's demurrer

15   and the demurrer created no obligation on Biosearch to amend its pleadings.  Tellingly, Life Tech

16   does not even attempt to argue that Biosearch is precluded under the doctrine of *res judicata* from

17   asserting the same claims of the Superior Court Action in this case, revealing Life Tech's

18   awareness that its demurrer in the Superior Court Action amounts to nothing in this case.

19           Furthermore, Life Tech's insinuations regarding Biosearch's motives for dismissing the

20   Superior Court Action are false and illogical.  Biosearch's decision to dismiss the Superior Court

21   Action is simply explained by its desire to conserve judicial and party resources.  By dismissing,

22   the parties could adjudicate all claims in a single action, rather than litigate two separate actions

23   simultaneously in both state and federal court.  Consequently, Biosearch dismissed the Superior

24   Court Action on the same day that it filed its answer and counterclaims in this case.  Additionally,

25   Life Tech's speculations are illogical.  It would make no sense for Biosearch to dismiss the

26   Superior Court Action because it believed its claims were inadequately pleaded, and then plead

27   virtually identical allegations in its counterclaims before this Court.  (*Compare* Dkt. No. 26-2, Ex.

28   A *with* Dkt. No. 13.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15                          10cv2665 JAH (MDD)

DB2/ 22429507.2

1    Similarly, Biosearch's amendment in this action, *i.e.*, the Amended Counterclaims, is no

2    reason to preclude Biosearch from further amending its claims if the Court determines that

3    Biosearch has not met the pleading requirements of Rule 8.  After Life Tech's first motion to

4    dismiss [Dkt. No. 18-1], Biosearch filed its Amended Counterclaims in accordance with Fed. R.

5    Civ. P. 15(a).  Filing the Amended Counterclaims is certainly no admission by Biosearch of

6    failure to meet its pleading requirements.  Furthermore, no court has ever determined that any of

7    Biosearch's pleadings have been deficient.  Biosearch filed its Amended Counterclaims out of an

8    abundance of caution and in an effort to prevent unnecessary motion practice.

9        For these reasons, should the Court determine that Biosearch's Amended Counterclaims

10   are insufficient, Biosearch requests leave to amend.  There is no reason why the Court should not

11   allow Biosearch leave to amend and a failure to do so may be improper.  *Manzarek v. St. Paul*

12   *Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) ("Dismissal without leave to amend

13   is improper unless it is clear, upon de novo review, that the complaint could not be saved by any

14   amendment.").[6]

15   **V.**     **CONCLUSION**

16       Life Tech bases almost its entire argument on the false premise that a consumer who buys

17   from a third-party distributor a product restricted by a license is not a party to the contract with

18   the product manufacturer.  Accordingly, most of Life Tech's arguments fail in light of clear Ninth

19   Circuit case law to the contrary.  For the foregoing reasons, Biosearch requests that this Court

20

21

22

23

24

25

26

27   ---

[6]    Despite Life Tech's misleading suggestion that the *Manzarek* court found the claims futile
28   and denied leave to amend (*see* Motion at 22), the Ninth Circuit actually held that the district
     court had abused its discretion by failing to allow an opportunity to amend.  519 F.3d at 1034.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 22429507.2

1   holds that Biosearch's Amended Counterclaims meet the pleading requirements of Rule 8, or, in

2   the alternative, grant Biosearch leave to amend its Amended Counterclaims.

3   Dated: July 25, 2011                              Respectfully submitted,

4                                                     MORGAN, LEWIS & BOCKIUS LLP

5

6   By s/ Rita E. Tautkus
    _____
    Rita E. Tautkus
7   Attorneys for Defendant and
    Counterclaimant
8   BIOSEARCH TECHNOLOGIES, INC.
    E-mail:  rtautkus@morganlewis.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

                                  17                        10cv2665 JAH (MDD)

DB2/ 22429507.2